2021 IL App (2d) 200203-U
No. 2-20-0203
Order filed September 29, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-2494 |
| CORDERO R. EVERETT, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: On appeal from defendant's conviction for armed robbery with a firearm, (1) defendant was not barred under the invited-error doctrine from disputing on appeal that the object he held during the robbery of the store was a firearm, and (2) the State proved, through the testimony of the store associate and surveillance video, that defendant held a firearm.

¶ 2    Following a bench trial, defendant, Cordero R. Everett, was found guilty of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2016)) and sentenced to 28 years in prison. The sole issue raised on appeal is whether the evidence was sufficient to prove beyond a reasonable doubt that defendant was armed with a firearm. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant and his codefendant, James Burnett III, were charged by indictment with armed robbery with a firearm (*id.*), aggravated robbery (*id.* § 18-1(b)(1)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The charges stemmed from the robbery of a Verizon store in Zion. (The State later nol-prossed the unlawful possession charge.)

¶ 5      Defendant's bench trial began on December 17, 2018. In his opening statement, defense counsel contended that defendant did not commit the offense. Counsel argued: (1) it was impossible from the surveillance video depicting the offense "to make an identification between [defendant] and [codefendant]"; and (2) an alibi witness would establish that defendant could not have been at the Verizon store at the time of the offense. Defense counsel did not refer to the firearm.

¶ 6      The State presented testimony from the victim, Isela Martinez; five police officers; and an employee of 3SI Security Systems, a company that provided security tracking devices to Verizon. Defendant presented alibi testimony from one witness. Because the sole issue raised on appeal concerns the sufficiency of the State's evidence related to the firearm, we limit our recitation of the evidence accordingly.

¶ 7      Martinez testified that, at about 10:30 a.m. on September 14, 2017, she was working at a Verizon store in Zion when an individual entered. She described him as a black male in his 20s who had a "close beard" and wore a striped shirt, "cheap wig," and fake mustache. (Although Martinez never identified this individual as defendant, this fact was established by other evidence, and defendant makes no challenge to its sufficiency.) Martinez asked defendant what she could do for him, and defendant told her that he wanted to pay a bill. When she asked him if he wanted to

pay by cash, credit, or check, defendant "proceeded to walk around the counter and with a gun and said that he wanted to pay with that." The following colloquy ensued:

"Q. When he said he wanted to pay with this and he showed you a gun, did you get a look at the gun?

A. No, not really.

Q. What did he do with the gun?

A. He just pointed it to my side."

Martinez testified that she gave defendant cash from underneath the counter and then they went into the back room where the merchandise was located. Martinez opened a vault, defendant passed a bag to her, and she filled the bag with merchandise. Defendant then asked Martinez to lie down on the floor with her feet crossed and count backward from "20 or 15." She did so. After defendant left the building, Martinez heard a car door open. Martinez then received a phone call from security. After speaking with security, she called 911.

¶ 8    Martinez identified People's exhibit No. 3 as a surveillance video of the incident. The video, which was 2 minutes and 42 seconds long, was played for the court. Martinez testified that it accurately reflected what had happened in the store that day. The video showed defendant enter the brightly lit store and walk to the counter at the back where the register was located and Martinez was sitting. As he approached the counter, defendant pulled what appeared to be a gun from the waist area of his pants with his right hand. Defendant walked behind the counter and grabbed Martinez's left arm with his left hand. Martinez, using her right hand, opened a drawer and removed a tray of cash as defendant continued to hold her left arm. Defendant then pointed the gun at Martinez's side and physically directed her into a room behind the register area. At this point in the surveillance video, the camera view switched to an overhead shot of the back room,

looking down on defendant and Martinez. As defendant and Martinez entered the back room, defendant switched the gun from his right hand to his left hand. For the next approximately 23 seconds of the video, the gun can be clearly seen from various angles as defendant held it in his left hand and as he returned it to his right hand. During this time, Martinez filled with merchandise a bag defendant was holding. Defendant briefly left the view of the camera. After he returned, and for about the next minute, he held the gun in his right hand, pointed toward the floor, as Martinez continued to remove merchandise from the vault. The video concluded with Martinez lying on the floor and defendant exiting the building with the bag of merchandise.

¶ 9     Additional testimony established that a security tracking device was included in the items that Martinez had placed in the bag. The police were notified of the robbery and began tracking the device, which moved south from the Verizon store until it turned west on 33rd Street. Zion police officer Joseph Richardt testified that he was investigating the robbery at the Verizon store when he observed—in the middle of the westbound lane of the 1900 block of 33rd Street—a bag containing "several boxes of what appeared to be a cell phone or device boxes."

¶ 10    Zion police officer Kirk Henderson testified that he was dispatched in an unmarked vehicle to the last known location received from the tracking device. While at the intersection of 33rd Street and Gideon Avenue, he observed a silver Hyundai. Henderson followed the Hyundai as it turned south on Gilead Avenue from 33rd Street into a residential area. The Hyundai then turned north onto Galilee Avenue, where it parked in front of 3313 Galilee Avenue. Henderson drove past the Hyundai and observed codefendant in the driver's seat. Henderson drove around the block. When he returned, he observed the Hyundai now parked in the driveway at 3313 Galilee Avenue. Defendant was crouched behind the Hyundai and appeared to be removing its license plate. A marked squad car arrived, and defendant entered the driver's seat of the Hyundai. Codefendant

then approached from the side of the house at 3313 Galilee Avenue. The officer drew his weapon and ordered codefendant to get to the ground. Codefendant ignored the officer and entered the Hyundai. Defendant drove a short distance before pulling over. The men exited the Hyundai and fled on foot. Defendant was apprehended, but codefendant was not apprehended until sometime later.

¶ 11 Zion police detective Glen Luff testified regarding items located in the Hyundai. One of those items was "a magazine in the passenger door pocket." He identified People's exhibit No. 56 as the "Glock magazine that [he] found." The State moved to admit the magazine. The trial court asked if there was any objection, and the following transpired:

"[DEFENSE COUNSEL]: I'm going to object as to the relevance of it. We've all seen the video from the Verizon Wireless store. We see the gun that is in the offender's hand. And quite clearly, Judge, that clip is not the clip that was in that video. That clip is extended. It's larger than your average clip. The video shows a regular handgun with what appears to be a regular clip because there is no—there is nothing protruding out of the bottom of the gun. If that clip had been used in that gun in that robbery, you would see it sticking out of the bottom. It wouldn't be able to fit into that.

[ASSISTANT STATE'S ATTORNEY]: It was found in the car. It's relevant. It's an armed robbery. It was collected.

THE COURT: One of the allegations in the indictment is the possession of a firearm. Possession of a magazine with ammunition can be circumstantial evidence of possession of the item being a firearm. Are the party [*sic*] contesting or maybe not contesting that the item was a firearm that was used here? And I now understand it's an identification defense with an alibi. If the parties are not contesting that that was a firearm,

- 5 -

that's one thing. But the State does carry the burden of proof on every element, which might render—if that element is contested might render more evidence to that point relevant.

[DEFENSE COUNSEL]: They would have to show that [defendant] was in possession of that, and I think based on the facts of how both [defendant] and [codefendant] were in that vehicle, most notably [codefendant] was in the passenger seat and, therefore, he had access to that where [defendant] did not, I think that would be something in [codefendant's] possession as opposed to [defendant].

THE COURT: Could be, and that argument I understand. But for purposes of admissibility, not weight. The State carries the burden of proving beyond a reasonable doubt the item used during the robbery, assuming what happened, was a firearm. If you are not contesting it was a firearm, it makes this less relevant and probative. If the State vigorously has to establish it was a firearm makes it more relevant.

[DEFENSE COUNSEL]: I have no reason to doubt that it was a firearm used, but I don't know that for sure because it was not my client who possessed that firearm.

THE COURT: I understand. That's fine. I suppose another way for the Court to ask the question is like this. And you don't necessarily have to address it strategically if you do not want to at this point. Obviously, based upon the opening statements and the issues raised by the case, one of the issues the Court will have to determine is identification, who was it.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: But the Court will have to address every element of the allegations. Some elements would be perhaps contested more than others. Did a taking occur, the use

of force or threat of force, those types of things. Some of these are tactics and strategy questions. Is whether that item was a firearm going to be something contested in this case?

[DEFENSE COUNSEL]: No, Judge. I have no reason to doubt that, but I do have reason to doubt whether or not that was used in that robbery, that clip.

THE COURT: If you are telling me the defense is not contesting the item was a firearm—

[DEFENSE COUNSEL]: I have no reason to, Judge.

THE COURT: —then that makes this less relevant. Objection sustained.

[ASSISTANT STATE'S ATTORNEY]: Based on relevance, correct?

THE COURT: Based on relevance on the posture of the case being—these are my words, nobody else's—that a firearm was used in this interaction, and the question is whether [defendant] is responsible for it.

[ASSISTANT STATE'S ATTORNEY]: Thank you.

THE COURT: [Defense counsel], am I correct?

[DEFENSE COUNSEL]: Absolutely, Judge."

¶ 12    In closing argument, defense counsel contended that the State failed to prove beyond a reasonable doubt that defendant was the individual who robbed the Verizon store. Counsel argued, *inter alia*, that Martinez never identified defendant and that the video did not identify defendant beyond a reasonable doubt. Defense counsel made no argument concerning the firearm.

¶ 13    In finding defendant guilty of armed robbery, the trial court noted that the "case is, obviously, one of identification." The court referenced Martinez's testimony, noting that she provided a description of the offender and indicated that he "had a firearm, a gun." The court noted

that it had watched the surveillance video in chambers. After thoroughly recounting the evidence, the court found that it was sufficient to support a finding of guilty.

¶ 14    Defendant filed a motion for a new trial, which he later amended. The amended motion challenged, *inter alia*, the sufficiency of the evidence. In rejecting that challenge, the trial court noted that there was "video of the assailant; a pretty good video, a clear video, not grainy." The court stated:

> "The circumstantial evidence in this case was compelling and corroborative of the direct evidence that existed. Based upon the evidence that was admitted, the Court really carefully thought about it all those months ago and carefully and thoroughly revisited it prior to these hearings and is satisfied that the evidence does support a finding of guilt beyond a reasonable doubt."

¶ 15    Following a sentencing hearing, the trial court found that the convictions of armed robbery and aggravated robbery merged, and it sentenced defendant to 28 years on the armed robbery conviction. The court denied defendant's subsequent motion for reconsideration of his sentence. This timely appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    Defendant contends that the State failed to prove beyond a reasonable doubt that he was armed with a firearm during the robbery. The State responds that the evidence was sufficient and that, in any event, the doctrine of invited error bars defendant's challenge.

¶ 18    We address first the State's invocation of the invited-error doctrine, which holds that "a party cannot complain of error that it brought about or participated in" (*People v. Hughes*, 2015 IL 117242, ¶ 33). The State argues that the doctrine bars defendant's challenge "because defense counsel specifically stated [below] that defendant was not challenging whether the gun was a

'firearm.' " In support, the State cites *People v. Harvey*, 211 Ill. 2d 368 (2004), and *In re Detention of Swope*, 213 Ill. 2d 210 (2004). However, those cases are distinguishable because they did not involve a challenge to the sufficiency of the evidence. See *Harvey*, 211 Ill. 2d at 384-85 (holding that the defendants could not challenge on appeal the use of the mere-fact method of impeachment where they requested or agreed to its use at trial); *Swope*, 213 Ill. 2d at 215-17 (holding that the petitioner, who was committed as a sexually violent person, could not claim on appeal that he was denied due process when his treatment providers refused to speak with his court-appointed expert, where the petitioner's counsel later agreed to obtain the information by deposing the providers). Moreover, as defendant argues, although he did not actively contest that the object was a firearm, he did not stipulate that it was. Thus, the burden remained on the State to prove beyond a reasonable doubt that the object was a firearm. See *Estelle v. McGuire*, 502 U.S. 62, 69 (1991) ("[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense."). Accordingly, the issue has not been forfeited.

¶ 19    We turn now to the sufficiency of the evidence. When reviewing a challenge to the sufficiency of the evidence, the question presented is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard of review 'gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Id.* (quoting *Jackson*, 443 U.S. at 319). In performing our review, we "will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *McLaurin*,

2020 IL 124563, ¶ 22. "A conviction will not be set aside on appeal unless the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 20    The State charged defendant with armed robbery under section 18-2(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/18-2(a)(2) (West 2016)), which provides that a person commits armed robbery when he commits robbery (*id.* § 18-1) and he "carries on or about his *** person or is otherwise armed with a firearm." *Id.* § 18-2(a)(2). Under the Code, " 'firearm' has the meaning ascribed to it in Section 1.1 of the Firearm Owners Identification Card Act" (FOID Act). *Id.* § 2-7.5. Section 1.1 of the FOID Act defines a firearm as "any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." 430 ILCS 65/1.1 (West 2016). The FOID Act excludes the following from its definition of "firearm":

> "(1) any pneumatic gun, spring gun, paint ball gun or BB gun which either expels a single globular projectile *** [(1.1)] or *** breakable paint balls ***; (2) any device used exclusively for signaling or safety ***; (3) any device used exclusively for the firing of *** industrial ammunition; and (4) an antique firearm (other than a machine-gun) which *** is primarily a collector's item and is not likely to be used as a weapon." *Id.*

¶ 21    Defendant argues that the State failed to present sufficient evidence that the object carried by defendant met the statutory definition of a firearm and did not fit any of the statutory exceptions. Defendant acknowledges that "Illinois case law does allow proof of a 'firearm' based on the testimony of a single eyewitness" (see *Wright*, 2017 IL 119561, ¶ 76) but argues that Martinez's testimony was insufficient because she was not a trained professional taught to recognize firearms, she did not testify that she was familiar with firearms, she did not get a good look at the firearm,

and the firearm was never recovered. Defendant further argues that the video showing defendant "with an object in his hand that resembles a gun" did not establish that the object was a firearm as defined by the FOID Act.

¶ 22     The State argues that the evidence was sufficient and, in support, relies primarily on *People v. Washington*, 2012 IL 107993, and *People v. Malone*, 2012 IL App (1st) 110517. The State also cites our recent unpublished decision in *People v. Boose*, 2021 IL App (2d) 190416-U, as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Jan. 1, 2021) (stating that a nonprecedential order entered under Rule 23(b) after January 1, 2021, may be cited for persuasive purposes). We address each in turn.

¶ 23     *Washington* applied a prior version of the armed robbery statute. *Washington*, 2012 IL 10799, ¶¶ 5-6. The defendant was charged under that statute with possessing a "dangerous weapon," but the statute did not define the term. *Id.* ¶ 6. At issue on appeal was whether the State presented sufficient evidence that the defendant was armed with a "dangerous weapon." *Id.* ¶¶ 24, 29. The defendant argued that the evidence was insufficient because no weapon was recovered and no testimony was provided as to the size, weight, or metallic nature of the weapon. *Id.* ¶ 24. The appellate court agreed and reversed the defendant's convictions, but the supreme court reversed the appellate court. *Id.* ¶¶ 25, 37. The court relied on the victim's testimony that the defendant pointed a gun at him, forced him into a truck, held the gun to his head, and then again pointed the gun at him while forcing him into the cargo area of the truck. *Id.* ¶ 35. The court noted that the victim had an unobstructed view of the weapon for several minutes and testified that it was a gun. *Id.* ¶ 35. The court further noted "that there was no real dispute at trial that defendant possessed some type of gun when he committed the crimes—during closing argument defense counsel did not argue that defendant did not possess a gun, only that it could not be known for sure whether

the gun was real or a toy because no gun was ever recovered." *Id.* ¶ 36. The court concluded that, given the victim's "unequivocal testimony and the circumstances under which he was able to view the gun, the jury could have reasonably inferred that defendant possessed a real gun." *Id.*

¶ 24    In *Malone*, the defendant was charged, as in this case, with armed robbery with a firearm under section 18-2(b) of the Code. *Malone*, 2012 IL App (1st) 110517, ¶ 1. The evidence at the defendant's bench trial established that the defendant entered a Walgreens where Betty Ross was working as a cashier. *Id.* ¶ 2. The defendant approached the cash register to make a purchase. *Id.* When Ross opened the cash drawer, the defendant reached into the drawer. *Id.* ¶ 3. Ross pushed the defendant's hand away and closed the drawer with her hip. *Id.* As Ross walked away from the register, she heard a noise " 'like something heavy hit the counter.' " *Id.* ¶ 4. Ross looked over her shoulder and saw the defendant holding a gun in his right hand. *Id.* She described the gun as "black or black and silver." *Id.* The defendant was resting the gun on the counter. *Id.* The defendant told her to open the cash register. *Id.* When she did, he took the money and fled. *Id.* When Ross was asked why she thought it was a gun, she testified: " 'I seen a whole gun. It was rested on the [counter], his hand was on it, it was black.' " *Id.* ¶ 51. Asked if she had " 'ever seen the gun before,' " she said, " 'That was the first one.' " *Id.* She also said that it looked like a gun. *Id.* In addition to Ross's testimony, a surveillance video showed the "defendant displaying an object that looks like a gun, which he held in his right hand." *Id.* ¶ 9. Ross identified a photograph taken from the surveillance camera as showing the defendant holding the gun in his right hand, and she circled the gun on the photograph. *Id.* ¶ 10. The trial court found the defendant guilty of armed robbery with a firearm. *Id.* ¶ 24.

¶ 25    On appeal, the defendant contended, as does defendant here, that the evidence was insufficient to prove that the object in the defendant's hand met the statutory definition of a firearm

and did not fit any exceptions. *Id.* ¶ 41. The defendant noted that the gun was never recovered, Ross's description was lacking in detail, and the video was brief and blurry. *Id.* The defendant further noted that the State did not present any expert opinion that, based on the video, the defendant was carrying a gun. *Id.* Thus, according to the defendant, it was impossible to determine the "physical properties" of the gun to determine whether it was a firearm or if it was a BB or toy gun. *Id.*

¶ 26    In finding the evidence sufficient, the *Malone* court pointed to Ross's testimony that she saw the defendant holding a gun and that she had " 'seen a whole gun,' " which she described as " 'black.' " *Id.* ¶ 51. The court further noted that Ross's testimony was corroborated by the videotape, "which depicted defendant holding what appears to be an actual gun while robbing the Walgreens, and by the still photograph in which Ms. Ross circled the gun held by defendant." *Id.* ¶ 52. The court also noted that "[t]here was no contrary evidence presented that the gun was a toy gun, a BB gun, or anything other than a 'real gun.' " *Id.* The court concluded:

> "As in *Washington*, viewing Ms. Ross's unequivocal testimony and the circumstances under which she viewed the gun, coupled with the videotape of the offense and still photograph, in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant was armed with a gun that met the statutory definition of firearm and convicted him of armed robbery." *Id.* ¶ 52.

¶ 27    In *Boose*, the defendant argued that the State failed to prove beyond a reasonable doubt that he possessed a firearm as an element of home invasion. *Boose*, 2021 IL App (2d) 190416-U, ¶ 47. Three witnesses testified that they saw up close an object that one of the intruders was carrying, and each identified the object as a " 'gun.' " *Id.* ¶ 53. Each also testified that the gun appeared real. *Id.* ¶¶ 53-55. One of the witnesses testified that he felt the gun against his head. *Id.*

¶ 55. That witness also testified that he had previously seen and held a firearm. *Id.* He said that the gun carried by the defendant " '100 percent seemed like a real gun.' " *Id.* However, he admitted that, during the home invasion, he was not " 'trying to decipher if it was a firearm or not,' though he 'believed it was.' " *Id.* The other two witnesses admitted that they had never owned or handled a firearm and would be unable to tell the difference between an actual firearm and a toy that looked like a firearm. *Id.* ¶ 56.

¶ 28    We affirmed defendant's conviction of home invasion. *Id.* at 63. After setting out the FOID Act's definition of "firearm," we stated:

> "Given this definition, one might expect that the State could never prove that a defendant possessed a 'firearm' unless the weapon was discharged during the offense or the police later discovered the weapon and determined that it met the statutory definition. However, that is not how the case law developed." *Id.* ¶ 50.

We then discussed cases, including *Washington*, where eyewitness testimony was deemed sufficient to prove that an object carried by the defendant was a real gun. *Id.* ¶¶ 51-52. Based on those cases, we held that the testimony was sufficient to conclude that the defendant possessed a firearm during the home invasion. *Id.* ¶ 57.

¶ 29    Based on *Washington*, *Malone*, and *Boose*, we hold that the evidence here was sufficient to prove beyond a reasonable doubt that defendant possessed a firearm. Indeed, the facts of *Malone* are strikingly similar to the facts here. Martinez testified that defendant walked around the counter "with a gun" and "pointed it to [her] side." Martinez's testimony was corroborated by the surveillance video. The video showed defendant entering the brightly-lit store and pull a gun from the waist area of his pants with his right hand. Nothing appeared to obstruct Martinez's view of the gun. The video showed defendant point the gun at Martinez's side and physically direct her

- 14 -

into the back room. As defendant and Martinez entered the back room, the overhead view of the brightly lit backroom provided a clear, unobstructed view of defendant brandishing the gun. Defendant can be seen switching the gun from his right hand to his left hand. For approximately 23 seconds of the video, the gun can be clearly seen from various angles as defendant held it in his left hand and as he returned it to his right hand. After defendant briefly left the view of the camera and then returned, he can be seen holding the gun in his right hand, pointed toward the floor, for at least another minute as Martinez continued to remove merchandise from the vault.

¶ 30　Defendant argues that *Washington*, *Malone*, and *Boose* are distinguishable because, unlike the witness testimony in those cases, "Martinez's testimony was anything but unequivocal" in that she admitted that she did not get a good look at the gun. We disagree. To be sure, although Martinez responded "not really" when asked whether she "got a look at the gun," there was nothing equivocal about her testimony that defendant walked around the counter "with a gun" and "pointed it to [her] side." Her testimony was corroborated by the surveillance video, which both shows that she had a clear view of the object held by the defendant and directly corroborates her statement that it was a gun. The evidence was sufficient for the trial court to find that the object was a real gun and, thus, a firearm. Indeed, defense counsel stated that he had "no reason" to contest that a firearm was used and essentially conceded that "[t]he video shows a regular handgun with what appears to be a regular clip." And, as in both *Washington* and *Malone*, no evidence even suggested that the gun was anything other than a firearm.

¶ 31　We disagree with defendant that *People v. Crowder*, 323 Ill. App. 3d 710 (2001), warrants a different conclusion. Defendant cites *Crowder* for the proposition that Illinois case law rejects the notion that a gun is simply what it " 'appears to be.' " *Id.* at 712. In *Crowder*, the only issue on appeal was whether the trial court properly dismissed the indictment, which charged the defendant

with unlawful possession of weapons by a felon and willful use of weapons, where the State destroyed the gun that formed the basis of the charges after the defendant requested to view it. *Id.* at 711-12. The court reasoned that, without being able to inspect the weapon, the defendant would be unable to refute the State's contention that the weapon was a firearm. *Id.* at 712. Unlike *Crowder*, this case does not involve the destruction of a firearm sought by a defendant in discovery. The question here is entirely one of proof: was the evidence presented at trial sufficient for a trier of fact to find beyond a reasonable doubt that defendant possessed a firearm during the robbery?

¶ 32     Defendant's reliance on *People v. Ross*, 229 Ill. 2d 255 (2008), is similarly unpersuasive. Like *Washington*, *Ross* interpreted a prior version of the armed robbery statute, which defined "armed robbery" as the commission of a robbery while armed with a "dangerous weapon." *Id.* at 272 (citing 720 ILCS 5/18-1, 18-2(a) (West 2004)). Defendant cites *Ross* for the proposition "that there is no presumption that an object that has the outward appearance of a gun is a dangerous weapon for purposes of the [former] armed robbery statute." In *Ross*, the victim testified that the defendant demanded his wallet as he pointed " 'a black, very portable gun' " at him. *Id.* at 258. The victim described the gun as " 'small' " and " 'something you can conceal.' " *Id.* The gun used in the robbery was recovered (although not entered into evidence) and reported to be a BB gun with a 3-inch barrel. *Id.* In denying the defendant's posttrial motion arguing that the evidence was insufficient to prove that the gun was a "dangerous weapon," the trial court stated that " 'the victim clearly believed it to be a dangerous weapon.' " *Id.* at 259. The supreme court agreed with the defendant that the State failed to prove that he possessed a dangerous weapon. *Id.* at 277. The court held that the trial court erred in relying on the "subjective feelings of the victim" rather than the "objective nature of the gun," which precluded any inference of dangerousness. *Id.* See *Washington*, 2012 IL 107993, ¶ 34 (discussing *Ross* and noting that "the evidence presented at

trial showed that the 'gun' was, in fact, a small BB gun, with only a three-inch barrel"; thus, the evidence "actually precluded a finding that the 'gun' used by the defendant was a dangerous weapon"). Here, unlike in *Ross*, no BB gun or other toy gun was recovered that could have precluded the trial court from inferring that the gun used to commit the crime was a firearm.

¶ 33    Based on the foregoing, we cannot say that the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. Accordingly, we affirm.

¶ 34                                III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 36    Affirmed.