NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230771-U

NO. 4-23-0771

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 18, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| ALEX J. SANDOVAL, | ) | No. 22CM204 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Colby G. Hathaway, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed, concluding the State failed to prove defendant was a
                "licensee" and therefore failed to prove an essential element of a violation of the
                Firearm Concealed Carry Act.

¶ 2        Following a jury trial in May 2023, defendant, Alex J. Sandoval, was convicted of

one count of violating the Firearm Concealed Carry Act (Concealed Carry Act) (430 ILCS

66/70(d) (West 2022)) for carrying a concealed firearm under the front passenger seat of his car

while under the influence of alcohol. Defendant appeals, arguing (1) the evidence was insufficient

to sustain his conviction; (2) his trial counsel was ineffective for failing to (a) object to the

testimony of the police officer who administered his horizontal gaze nystagmus (HGN) test on the

basis of its inadmissibility due to lack of proper foundation or (b) request a jury instruction

specifically defining "carrying" a weapon "on or about" one's person; and (3) the State failed to

prove he was issued a license to carry a concealed handgun and therefore failed to prove an essential element of a violation of the Concealed Carry Act. For the reasons that follow, we reverse.

¶ 3                                    I. BACKGROUND

¶ 4          On September 23, 2022, defendant was charged with one count of violating the Concealed Carry Act for knowingly carrying a Glock firearm under the front passenger seat of his car while under the influence of alcohol (*id.*), one count of disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2022)), and, in a separate case (Henry County Case No. 22-DT-73), one count of driving under the influence of alcohol (625 ILCS 5/11-501 (West 2022)). These charges were in connection with defendant's alleged conduct at Grease Monkeys Sports Bar & Grill (Grease Monkeys) in Colona, Illinois, on September 22, 2022.

¶ 5                                    A. Jury Trial

¶ 6                              1. *The State's Evidence*

¶ 7                                 a. Keziah Lehman

¶ 8          Keziah Lehman worked as a bartender at Grease Monkeys on September 22, 2022. Lehman testified defendant was drinking and gambling inside the establishment that night. Defendant finished two beers and drank about half of a third. At approximately 11:30 p.m., Lehman announced "last call." Defendant "told the guys that were still sitting there that they could stay as long as they want because he tipped [Lehman] $10." Shortly thereafter, Lehman began cleaning the bathroom approximately 10 feet from where the group of patrons was seated. Lehman heard defendant say "something about knocking all of the guys out," and she then "heard all of the chairs scoot back at once." When Lehman came out of the bathroom to see what was going on, she observed defendant put his beer on the table and "r[u]n right past" her, leaving the bar "very quickly." Lehman grabbed the arm of someone who was trying to follow defendant out the door.

Lehman locked the door to keep defendant from coming back inside. While looking out the window, Lehman observed defendant "circle the front of the building, and then go across the street, go around the block, and park across the block with his lights off" on a grassy overflow parking area. Lehman called 911 and noticed defendant's "dome light was on" and he was "moving around" in his car.

¶ 9                                              b. Emily Duran

¶ 10          Colona police officer Emily Duran testified she was dispatched to Grease Monkeys to respond "to a disturbance that occurred" on September 22, 2022. When Officer Duran arrived, she found defendant in the driver's seat of his car on the north side of the parking lot facing south towards the doors of the establishment. When defendant exited his car, Officer Duran believed she smelled alcohol. Later, defendant was transported to the Colona Police Department and performed standardized field sobriety testing. Officer Duran asked defendant if he would take a breath test, but he refused.

¶ 11                                             c. Maxwell Steele

¶ 12          Colona police officer Maxwell Steele was dispatched to Grease Monkeys at about 11:30 p.m. on September 22, 2022, to respond to a call about a patron who "made some threats and left and came back and sat in the parking lot" with his "headlights turned off in a suspicious manner." Officer Steele noticed "a strong odor of alcohol and slurred speech" while speaking with defendant. Officer Steele asked defendant if he had a gun on him. At first, defendant "denied having one." After being asked again, defendant responded "that he had [a] weapon in his vehicle." Two other officers discovered a Glock firearm "under the passenger seat of the vehicle."

¶ 13          Defendant was transported to the Colona Police Department and agreed to perform the standardized field sobriety tests, including the HGN test. Defendant did not indicate he had

any issues with his eyes which would inhibit his performance on the test. Officer Steele testified there are six clues to be observed in this test. They are "lack of smooth pursuit, onset prior to 45 degrees, and nystagmus at a maximum deviation," in each eye. A minimum of four clues is necessary to indicate a person is potentially impaired by alcohol. Officer Steele observed all six.

¶ 14 Officer Steele next administered the walk-and-turn test. For the walk-and-turn test, eight clues are observed, with a minimum of two indicating potential impairment by alcohol. Officer Steele observed five. When asked to describe his observations of defendant's performance on this test, Officer Steele explained:

> "I observed that he made an improper turn when turning. He did a shuffling movement with his feet, when in the instructions you're supposed to have your—whatever foot planted, you're supposed to keep it planted when turning. On his seventh step of his first nine steps, he stopped to regain balance and used his arms for balance as well. He also grabbed the wall in doing so."

¶ 15 Finally, Officer Steele administered the one-leg stand test. For this test, four clues are observed, with a minimum of two indicating potential impairment by alcohol. Although Officer Steele "observed zero" clues for this test, he continued to note the "odor of alcohol" on defendant and his "slurred speech." Based on his training and experience and his observations of defendant both while at Grease Monkeys and at the station, Officer Steele believed defendant was under the influence of alcohol. The video of defendant performing these tests was admitted into evidence and played for the jury.

¶ 16 d. Zachary Bollinger

¶ 17 Colona police sergeant Zachary Bollinger testified he responded to the incident at

Grease Monkeys and found defendant sitting in his car facing the establishment. While conducting a pat-down of defendant, Sergeant Bollinger discovered a "30-round magazine sticking out of his pocket" and a "large knife *** attached to his belt on his waist." Defendant denied having a gun when first asked, but when asked again, he admitted having a gun in his car. A loaded Glock firearm was located in defendant's car. After defendant was transported to the police station, Sergeant Bollinger asked him if he had been drinking. Sergeant Bollinger's impression that defendant was under the influence was based on "[t]he odor of the alcoholic beverage on his breath, slurred speech, [and being] kind of unstable on his feet." According to Sergeant Bollinger, defendant "answered that he had had about five beers." Since Sergeant Bollinger was training Officer Steele, Sergeant Bollinger was more attentive to Officer Steele's administration of the field sobriety tests than he was to defendant.

¶ 18                    2. *Defendant's Evidence*

¶ 19            Defendant testified that on September 22, 2022, he had his first drink at 4:30 p.m., his second at 5 p.m., and his third at 5:30 p.m., all at home. Defendant left home at about 9 p.m. to go to Grease Monkeys, where he had two more beers. Defendant began gambling and, after winning a game, ordered everyone a round of drinks. Defendant ordered a third beer for himself at that point, but he only "took a sip on the way to the jukebox and a sip on the way back to the bar and set it down, and that was it." Someone interjected into the conversation defendant was having with other patrons, and "tension start[ed] building." Defendant said, " 'I don't need this,' " set his beer on the bar, and walked towards the back door because he "felt threatened."

¶ 20                    3. *Jury Instructions*

¶ 21            Defendant's counsel objected to two of the State's proposed non-Illinois pattern jury instructions. The trial court approved the two non-Illinois pattern jury instructions defendant's

counsel proposed as substitutes. Defendant's Instruction No. 1, read, "A person commits the offense of a violation of the Concealed Carry Act when he carries a concealed firearm while under the influence of alcohol under the standards set forth in subsection (a) of Section 11-501 of the Illinois Vehicle Code." Defendant's Instruction No. 2, read, in pertinent part:

"To sustain the charge of Violation of the Concealed Carry Act, the State must prove the following propositions:

*First Proposition*: That the defendant carried a concealed firearm; and

*Second Proposition*: That at the time the defendant carried a concealed firearm, the defendant was under the influence of alcohol under the standards set forth in subsection (a) of Section 11-501 of the Illinois Vehicle Code."

¶ 22                    4. *Notes From the Jury During Deliberations*

¶ 23        During deliberations, the jury submitted two notes to the trial court. The first note read, "Is it a violation of the Concealed Carry law to have a weapon in your vehicle as opposed to on your person?" In response to the court's request for input on how to respond, the State said, "Refer to the jury instructions. They don't say anything about on a person." Defendant's counsel agreed. With the agreement of the attorneys, the court provided a written answer as follows: "The law that applies in this case has been submitted to you in the instructions that have been provided. It is your duty to apply that law to the evidence that was produced in court." The second note read, "Your Honor, what are the standards set forth in subsection (a) of Section 11-501 of the Illinois Vehicle Code?" The State requested the court "let them know that's the Driving Under the Influence statute since that would be readily accessible to them." Defendant's counsel agreed. With

the agreement of the attorneys, the court provided a written answer as follows: "Subsection (a) of Section 11-501 of the Illinois Vehicle Code is the law regarding driving under the influence. You've been provided with the law concerning this charge in the instructions. It is your duty to apply that law to the evidence that was submitted in court."

¶ 24                                     5. *Verdict*

¶ 25            The jury found defendant guilty of violating the Concealed Carry Act (430 ILCS 66/70(d) (West 2022)). The jury found defendant not guilty of driving while under the influence of alcohol (625 ILCS 5/11-501 (West 2022)) and not guilty of disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2022)).

¶ 26                          B. Posttrial Motion and Sentence

¶ 27            Defendant filed a motion for judgment of acquittal notwithstanding the verdict. Defendant argued the conviction for the Concealed Carry Act violation was inconsistent with the acquittal for driving under the influence of alcohol. The trial court denied defendant's motion. The court sentenced defendant to 24 months' conditional discharge and 50 hours' community service. Defendant filed a motion to reconsider the sentence, arguing it was excessive. The court denied defendant's motion.

¶ 28            This appeal followed.

¶ 29                                  II. ANALYSIS

¶ 30                          A. Defendant's Initial Arguments on Appeal

¶ 31            On appeal, defendant initially argued (1) the evidence was insufficient to sustain his conviction in that, because his gun was found underneath his front passenger seat, the State failed to prove he "carried" it "on or about his person" and (2) in the alternative, he received ineffective assistance of counsel when his counsel failed to either (a) object to the admissibility of

Officer Steele's testimony about the HGN test due to lack of foundation or (b) request the trial court provide an instruction to the jury containing a definition of "concealed firearm" as it relates to being " 'carried on or about a person *** within a vehicle.' "

¶ 32                    B. Defendant's Additional Argument on Appeal

¶ 33            Shortly before the initially scheduled oral argument in this case, defendant's appellate counsel filed a "Motion for Leave to File Supplemental Opening Brief." Counsel averred that while preparing for oral argument, she "discovered an additional sufficiency issue that should have been raised in the initial opening brief," namely "that the provision of the [Concealed Carry Act] under which [defendant] was convicted applies only to 'licensees,' and that the State failed to prove that [defendant] had been issued a license to carry a concealed handgun." Counsel emphasized that the deadline for defendant to file a postconviction petition "ha[d] already passed and post-conviction relief is unavailable to [him]." The State opposed counsel's motion, asserting this new issue "is one that could have been raised in the initial brief." This court entered an order granting appellate counsel leave to file her supplemental brief. This court also entered an order "direct[ing] the parties to be prepared to address the impact of the Illinois Supreme Court decision in *People v. Harvey*, 2024 IL 129357 [filed October 18, 2024] on this case."

¶ 34            In his supplemental brief, defendant asserts that "[b]y its plain terms, the statute applies only to persons who have been issued a concealed carry [license (CCL)]." Defendant argues the State "presented no proof that [he] had been issued a [CCL], and therefore failed to sustain its burden to prove an essential element of the offense beyond a reasonable doubt." In response, the State points out defendant "did not raise this issue in the trial court in any way" and that "[h]aving affirmatively contended that the only elements of the offense were carrying the weapon and intoxication, [he] should be barred from now contending that there was a third element

- 8 -

that needed to be proved." However, the State concedes "defendant is correct that [the statutory language] could be interpreted as limiting the statute to persons with a [CCL] and that proof of a license is required in a prosecution for this offense." The State accordingly acknowledges "defendant's conviction could be vacated on this basis." In his reply brief, defendant posits he did not affirmatively acquiesce to a decision to decline an instruction containing a definition of "licensee," as this issue was never raised. Defendant "did not actively contest this element, but he did not stipulate to it, either." For the reasons that follow, we agree with defendant and reverse his conviction outright.

¶ 35        It is well established that "for an issue to be preserved for review on appeal, the record must show that (1) a contemporaneous objection to the trial court's error was made, *and* (2) the issue was contained in a written posttrial motion." (Emphasis in original.) *People v. Rathbone*, 345 Ill. App. 3d 305, 308-09 (2003). Here, defendant did not raise the issue of the State's failure to prove his status as a "licensee," either through a contemporaneous objection in the trial court or through a posttrial motion. However, among the types of claims the Illinois Supreme Court has held to not be subject to forfeiture in such circumstances is a challenge to the sufficiency of the evidence to sustain a conviction. *People v. Cregan*, 2014 IL 113600, ¶ 16 (citing *People v. Enoch*, 122 Ill. 2d 176, 190 (1988)). Accordingly, this issue is not forfeited.

¶ 36        It is well-settled:

> "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004) (quoting *In re Winship*, 397

U.S. 358, 364 (1970)). When a defendant appeals his convictions, arguing the State failed to satisfy this burden of proof, a reviewing court will not retry the defendant but asks whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis in original.) *Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))." (Internal quotation marks omitted.) *People v. Crawford*, 2023 IL App (4th) 210503, ¶ 33.

¶ 37     Under the pertinent provisions of the Concealed Carry Act:

"(d) A licensee shall not carry a concealed firearm while under the influence of alcohol *** under the standards set forth in subsection (a) of Section 11-501 of the Illinois Vehicle Code.

A licensee in violation of this subsection (d) shall be guilty of a Class A misdemeanor for a first or second violation and a Class 4 felony for a third violation." 430 ILCS 66/70(d) (West 2022).

" 'Licensee' means a person issued a license to carry a concealed handgun." *Id.* § 5.

¶ 38     Whether a defendant's classification as a "licensee" can be considered an "element" of a violation of the Concealed Carry Act which the State is required to prove, like all others, beyond a reasonable doubt, is intimated in the Illinois Supreme Court's decision in *People v. Harvey*. In *Harvey*, the defendant was pulled over for driving with an obstructed windshield. *Harvey*, 2024 IL 129357, ¶ 3. One of the officers testified to seeing the defendant, sitting in the front seat, reach down towards the floorboard while the vehicle was being pulled over. *Id.* The other officer smelled alcohol while speaking with the defendant and the driver and saw two cups

in the cup holders. *Id.* ¶ 4. The officers searched the vehicle and discovered a semiautomatic pistol. *Id.* At trial, it was established that both officers asked the defendant if he had either a firearm owners identification card or a CCL and he told both officers he did not have either. *Id.* ¶¶ 5-6. The trial court found the defendant guilty of misdemeanor unlawful use of a weapon (UUW) (720 ILCS 5/24-1(a)(10)(iv) (West 2018)), concluding his furtive movement in the area from which the weapon was recovered was sufficient to establish his constructive possession of it on a public street. *Id.* ¶ 7. The court, however, did not mention the defendant's statements to the officers regarding not having a CCL. *Id.*

¶ 39　　　　With one justice dissenting, the First District affirmed. *Id.* ¶ 9 (citing *People v. Harvey*, 2022 IL App (1st) 211242-U). The appellate court agreed the evidence established the defendant's constructive possession of the weapon. *Id.* The court rejected the defendant's argument that the State "did not establish the *corpus delicti* of the offense because the State failed to corroborate his statement to the police that he did not possess a CCL," as his furtive movement in an attempt to conceal the weapon served as sufficient corroboration. *Id.* ¶¶ 8-9.

¶ 40　　　　Before the supreme court, the defendant contended "the State had to prove that he did not fall within the concealed carry exception by showing he had not been *issued* a currently valid CCL at the time of the stop." (Emphasis in original.) *Id.* ¶ 13. The defendant argued the State did not meet this burden, and his conviction, therefore, should be reversed. *Id.* Notably, the State did not dispute it had the burden of proving the defendant did not fall within the statutory exception. *Id.* ¶ 14. Rather, the State argued it was sufficient to prove the defendant merely did not present a CCL at the time of the stop. *Id.* The supreme court disagreed, holding:

　　　　　　"[I]t was not enough for the State to show that [the defendant] did not present a CCL at the time of the stop. To establish liability under section

24-1(a)(10) and to meet its burden of showing that the concealed carry exception did not apply, the State had to show that [the defendant] had not been issued a valid CCL." *Id.* ¶ 16.

The supreme court determined that the defendant's "admission that he had not been issued a valid CCL did not require independent corroboration under the *corpus delicti* rule" and "the evidence adduced at trial was sufficient to sustain his conviction." *Id.* ¶ 29.

¶ 41 Although defendant in this case was convicted under the Concealed Carry Act, while the defendant in *Harvey* was convicted of UUW, we find the cases to be analogous. The supreme court held in *Harvey* that not being issued a CCL, and thus not being covered by the concealed carry exception, is an element of UUW the State is required to prove. The concealed carry exception set forth in in the UUW statute (720 ILCS 5/24-1(a)(10)(iv) (West 2022)) expressly contemplates "a person who has been issued a currently valid license *under the \*\*\* Concealed Carry Act*." (Emphasis added.) Likewise, a defendant's status as a "licensee" for purposes of the Concealed Carry Act, namely being "a person issued a license to carry a concealed handgun" (430 ILCS 66/5 (West 2022)), is, as the State virtually concedes in its supplemental response brief and expressly conceded at oral argument, an element of a Concealed Carry Act violation the State is required to prove beyond a reasonable doubt.

¶ 42 With regard to defendant's status as a "licensee," the State is correct that he "did not raise this issue in the trial court in any way." However, this is not tantamount to "[h]aving affirmatively contended that the only elements of the offense were carrying the weapon and intoxication" such that defendant "should be barred from now contending that there was a third element that needed to be proved." The State presents this proposition under the auspice of the "invited-error doctrine." As the First District has summarized:

> " 'Under the invited-error doctrine, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error.' *People v. Manning*, 2017 IL App (2d) 140930, ¶ 16; see also [*People v.*] *Hughes*, 2015 IL 117242, ¶ 33 ('the invited error rule' states that 'a party cannot complain of error that it brought about or participated in') ***. 'Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented.' *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004)." *People v. Cox*, 2017 IL App (1st) 151536, ¶ 73.

¶ 43        In support of his contention that the invited-error doctrine does not apply, as he neither contested nor stipulated to his status as a "licensee," defendant relies in particular on two decisions—*People v. Wilson*, 215 Ill. App. 3d 966 (1991), and *People v. Everett*, 2021 IL App (2d) 200203-U. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) ("[A] nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes.").

¶ 44        In *Wilson*, the defendant was charged in 1983 with felony retail theft but was not tried and convicted for this offense until 1990. *Wilson*, 215 Ill. App. 3d at 969. In 1988, the felony retail theft statute was amended to remove a prior conviction as an element of the offense. *Id.* However, this amendment was "substantive in nature" and, accordingly, "was not to be applied retroactively." *Id.* The defendant's indictment alleged a 1980 conviction for retail theft, but "this was never proved as an element at trial." *Id.* While the State admitted a certified copy of that prior conviction into evidence, there was no indication in the record it was submitted to the jury. *Id.* This court noted that "[i]t [was] clear from the record the [trial] court, prosecution, and defense counsel were of the opinion defendant's prior conviction was not to be made an element of the

- 13 -

offense." *Id.* However, this court also noted, "The failure to prove a material allegation of an indictment beyond a reasonable doubt is fatal to the judgment of conviction and the question may be raised for the first time upon review." *Id.* at 970. This court reduced the defendant's felony retail theft conviction to a misdemeanor retail theft conviction and remanded the cause for resentencing, as "judgment was entered for the offense of felony retail theft even though the prior theft was *never* proved." (Emphasis in original.) *Id.*

¶ 45        In *Everett*, the defendant was convicted after a bench trial of armed robbery with a firearm. *Everett*, 2021 IL App (2d) 200203-U, ¶ 2. On appeal, the defendant raised a challenge to the sufficiency of the evidence, asserting "the State failed to prove beyond a reasonable doubt that he was armed with a firearm during the robbery." *Id.* ¶ 17. The State contended this challenge was barred by the invited-error doctrine in that defendant's counsel informed the trial court defendant was not challenging whether the gun was a firearm. *Id.* ¶ 18. The appellate court concluded the invited-error doctrine did not bar defendant's challenge to the sufficiency of the evidence in that "although he did not actively contest that the object was a firearm, he did not stipulate that it was. Thus, the burden remained on the State to prove beyond a reasonable doubt that the object was a firearm." *Id.* The court then determined the evidence was sufficient to prove beyond a reasonable doubt defendant had a firearm. *Id.* ¶ 29.

¶ 46        In the instant case, whether defendant was a "licensee" for purposes of the Concealed Carry Act was never raised during trial. Indeed, in this court's review of the record, there are only two occasions when the words "license" or "licensee" were ever even used—first, during *voir dire*, when prospective jurors were asked if they were holders of CCLs, and second, during the sentencing hearing, when the trial judge was reciting from the pertinent provisions of the Concealed Carry Act. At no point during the trial—not during opening statements, any of the

- 14 -

testimony, the jury instructions conference, or closing statements—was defendant's status as a "licensee" ever mentioned, much less explicitly contested or conceded. Thus, as in *Wilson*, defendant was convicted of an offense entailing a particular element which was never proven. *Wilson*, 215 Ill. App. 3d at 970. As in *Everett*, defendant neither actively contested nor stipulated to his status as a "licensee." *Everett*, 2021 IL App (2d) 200203-U, ¶ 18. Therefore, the burden was still on the State to prove this element, like all others, beyond a reasonable doubt. Defendant was not prohibited by the invited-error doctrine from challenging the sufficiency of the evidence with regard to an element the State ultimately did not prove. *Id.*

¶ 47          As the State did not meet its burden of proving defendant was a "licensee" for purposes of the Concealed Carry Act—which the State conceded at oral argument—and as "[r]eversal for evidentiary insufficiency is required when the State fails to prove its case," this court must reverse his conviction outright. *People v. Cowans*, 336 Ill. App. 3d 173, 181 (2002). As we reverse on this basis, we do not separately consider defendant's other challenge to the sufficiency of the evidence or his claim of having been afforded ineffective assistance of counsel.

¶ 48                              III. CONCLUSION

¶ 49          For the reasons stated, we reverse the trial court's judgment.

¶ 50          Reversed.