MOSE WILLIAMS *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon January 18, 1882.*

1. CRIMINAL LAW—*of the indictment—for receiving stolen goods.* An indictment for receiving stolen goods for gain, etc., should describe the goods with accuracy, and a variance in this particular will be fatal.

2. SAME—*proof must sustain every material allegation.* It is an elementary principle that every material fact essential to the commission of a crime must be distinctly alleged and clearly proven on the trial in order to warrant a conviction.

3. SAME—*on charge of receiving stolen money, a larceny of the money must be shown.* It is absolutely essential to a conviction for having received stolen money for gain, knowing it to have been stolen, that the prosecution should prove, beyond a reasonable doubt, that a larceny of the money had been committed. This fact, being the *corpus delicti,* can not be established alone by the confession of the accused.

4. SAME—*sufficiency of proof in the particular case.* A charge in an indictment that the defendants, "for their own gain, knowingly and feloniously received *one gold coin* of the value of $10, one bill, purporting to be issued by the Monmouth National Bank, of the value of $10, and one bill, purporting to be issued by some National bank, of the value of $5," knowing them to have been stolen, is not sustained by the testimony of a witness that he found on one of the defendants $10, and on the other $15 and some small change, as it does not show it was of the kind and character of money described in the indictment.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. GORDON & HOOD, for the plaintiffs in error:

Confessions made through hope or fear, induced by words or acts of the party having the prisoner in custody (out of court), are not admissible. 1 Arch. Crim. Prac. and Pl. side page 127; 1 Greenleaf on Evidence, secs. 219, 220; 1 Bouvier's Dic. 4 Confession; *Miller* v. *The People,* 39 Ill. 457; *Gates* v. *The People,* 14 id. 433; *Brown* v. *The People,* 91 id. 506; *Hosten* v. *The People,* 51 id. 239.

Confessions should be received with caution. · 1 Arch. Crim. Prac. and Pl. 125, note 1; 1 Greenleaf on Evidence, sec. 214; 1 Bouvier's Dic. 3 Definition of Confession.

In the United States, the prisoner's confession, when the *corpus delicti* is not otherwise proved, is held insufficient for a conviction. *May* v. *The People,* 92 Ill. 343, and cases there cited.; 1 Greenleaf on Evidence, sec. 217; 4 Blackstone's Commentaries, side page 359; *Bergen* v. *The People,* 17 Ill. 426.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Mose Williams and Frank Lewis were tried and found guilty at the March term, 1881, of the Randolph circuit court, before the court and a jury, upon a charge of having knowingly and feloniously received, for their own gain, certain bank bills and gold coin, well knowing the same to have been stolen, and were duly sentenced to the penitentiary, in pursuance of the verdict of the jury, for a period of eighteen months,—to reverse which conviction this writ of error is prosecuted.

A reversal is urged mainly on two grounds: First, it is urged that the conviction is not warranted by the evidence; second, that the court erred both in the giving and refusing of instructions, to the prejudice of the accused.

George Weaver testified, "that on the morning of the 11th of March he saw the defendants coming up over the barges from the boat to where he was standing, and that soon after that he again saw them standing on the levee, and went up to them and took hold of them, and told them he would have to take them on the hill, and that they broke loose from him and ran off." This witness further states that he did not tell them he was arresting them, or what he was going to take them on the hill for.

John W. Ragsdale, marshal of the city of Chester, testifies, that having gone in pursuit of the defendants, he found them

asleep in a straw-pile near the road leading to Stone's land-
ing; that on waking them up he asked them if they did not
get off the boat at Chester, and they said they did. About
this time William Reno, who was also in search of the
accused, came up, and in his presence witness asked the
accused how much money they had, and they said they had
only a dollar. Witness then gave his revolver to Reno, and
told him to guard them while he searched them. The witness
says: "I found on Mose Williams $10, and on Frank Lewis
$15, and some small change, amounting, I think, to twenty-
five cents. I asked them where they got the money, and they
.said they had been paid off. I told them their wages would
not have amounted to that, and they said they had won it.
I then asked them if it was not the proceeds of a robbery
on the boat, and they said it was, and that it was given them
by a white man, and he told them to go along and keep their
mouths shut. They admitted they had been arrested that
morning in Chester. I asked them if they did not know a
robbery had been committed on the boat 'Golden Dust,' and
they said they had heard some of the 'grays' squealing
about being robbed on the boat. I do not think Lewis said
anything. They said a white man gave it to them. They saw
him walking around on the deck, and they asked him what he
was doing, and he told them to go along, and they went to
the front of the boat, and he followed them and gave them
the money, and told them to keep their mouths shut. While
I was searching them, and during the conversation, Reno
was sitting near by guarding them, with two revolvers in his
hands. They told me to keep the money and let them go,
for they did not want to go to the penitentiary.   *   *   *   I
had not told them I had arrested them. Had no warrant.
Williams done the talking. Lewis said nothing at all." ·

Reno's testimony is substantially the same as Ragsdale's.
There are some slight discrepancies between them in repeat-
ing the statements of the accused, but we do not regard this

as materially affecting the testimony of either.    The forego-
ing is all the evidence in the case.

It must be conceded that the conduct of the accused is
hardly consistent with innocence.    Their leaving the boat at
the early hour they did, without any apparent legitimate ob-
ject in doing so, their flight, and secreting themselves in the
straw-pile, and their contradictory statements with respect to
how they came by the money found on their persons, are all
circumstances of the most suspicious character, and leave
little room, if any, to doubt that they are guilty of some
crime or other; but does the evidence establish, beyond a
reasonable doubt, that they committed the particular crime
with which they are charged in the indictment?

Mr. Wharton, in discussing the sufficiency of an indict-
ment for receiving stolen property, among other things
says:    "The indictment should describe the goods with
accuracy, and a variance in this particular will be fatal."
(2 Wharton on Crim. Law, sec. 1901, 7th ed.)    Indeed, it is
an elementary and fundamental principle that every material
fact essential to the commission of a crime must be distinctly
alleged and clearly proven on the trial, in order to warrant a
conviction.    The specific charge in this case is, that the
accused, "for their own gain, knowingly and feloniously
received *one gold* coin of the value of $10, one bill, purport-
ing to be issued by the Monmouth National Bank, of the value
of $10, and one bill, purporting to be issued by some National
bank, of the value of $5," knowing the same to have been
stolen.    It was clearly the duty of the pleader to give, as he
did, a proper description of the stolen money alleged to have
been received by the accused, otherwise they could not intel-
ligently have prepared for trial; and as this was a material
averment in the indictment, it follows the prosecutor was
bound to prove it substantially as laid.    This has not been
done.    The only evidence to be found in the record that can
be regarded as having the slightest reference to this allega-

tion in the indictment, is the statement of Ragsdale with reference to what he found on the defendants when he searched them at the straw-pile. He says: "I found on Mose Williams $10, on Frank Lewis $15, and some small change, amounting to, I think, twenty-five cents." There is no proof of their having received, or of having about them, a gold coin of any kind, or a National bank bill of any denomination or description. They are not, nor is either of them, so much as mentioned by any witness. It is clear that the accused might well have had the amount of money on their persons testified to by the witness, and not have had a gold coin or bank bill of any kind about them, much less the particular kinds mentioned in the indictment.

It follows, therefore, unless all authority and precedent on the subject are to be set at defiance and wholly disregarded for the purpose of punishing the accused, who are, in all probability, guilty of some crime or other, this conviction can not be sustained.

There is also another fatal objection to the conviction. There is no evidence at all, outside of the very loose, unsatisfactory and contradictory statements of one of the accused, that the money found upon their persons, even if it had been properly described in the indictment, was stolen money. To make out the offence charged in the indictment, it devolved upon the People to prove, beyond a reasonable doubt, that a larceny of the money had been committed. Upon this bottom fact the whole prosecution depended. This fact being what is known as the *corpus delicti*, could not be established alone by the confessions of the accused. This rule is fully recognized by the ablest text writers of the day and the general current of authorities. 1 Wharton on Crim. Law, sec. 745; 1 Greenleaf on Evidence, sec. 217; *May* v. *The People*, 92 Ill. 343.

As the judgment of the court below will have to be reversed for the reasons already stated, it is unnecessary to

consider the exceptions taken to the instructions of the court, or other questions discussed by counsel.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings.

*Judgment reversed.*