**2024 IL 129357**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 129357)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. ANTHONY HARVEY, Appellant.

*Opinion filed October 18, 2024.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet and Holder White concurred in the judgment and opinion.

Justice Neville specially concurred, with opinion, joined by Justice Rochford.

Justice O'Brien specially concurred, with opinion.

## OPINION

¶ 1 Following a bench trial in the circuit court of Cook County, the defendant, Anthony Harvey, was convicted of misdemeanor unlawful use of a weapon (UUW)

(720 ILCS 5/24-1(a)(10)(iv) (West 2018)) for possessing a firearm on a public street without a concealed carry license (CCL). On appeal, Harvey argued, in part, that the State failed to establish the *corpus delicti* of the offense because the only evidence that Harvey lacked a CCL came from his own out-of-court statements made to police officers. The appellate court rejected Harvey's argument and affirmed his conviction. 2022 IL App (1st) 211242-U. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                BACKGROUND

¶ 3        Harvey was arrested on February 19, 2021, and charged with misdemeanor unlawful use of a weapon under section 24-1(a)(10)(iv) of the Criminal Code of 2012 (Code) (720 ILCS 24-1(a)(10)(iv) (West 2018)). At the ensuing bench trial, Chicago police officers Michael Baciu and Humberto Cruz testified that, at approximately 11:36 p.m. on February 19, 2021, they were patrolling in an unmarked car near 4513 West Chicago Avenue when they observed a 2010 Chrysler Town and Country minivan being driven with an obstructed windshield. The officers activated their emergency equipment and pulled the van over. Officer Baciu testified that, as the van was being curbed, he observed Harvey, sitting in the front passenger seat, "reach down towards the middle of the floorboard." Officer Cruz similarly testified that "[Harvey] made a motion towards the middle floorboard" when the officers' emergency lights were activated. Officer Baciu also stated that, after the vehicle was curbed, he observed Harvey "make a movement towards the floorboard of the van."

¶ 4        Once the van was curbed, the officers spoke to the driver and Harvey. Officer Cruz smelled alcohol and observed two cups in the van's cup holders. The officers then asked the occupants to exit the van. As Harvey stepped out, Officer Baciu observed that Harvey's pants were undone, as though he was trying to conceal or remove an item from his pants. Officer Cruz confirmed this and stated, in his experience, this meant that Harvey "was trying to conceal something or *** trying to discard something if he had something located in his waistband." The officers then searched the van for alcohol. While Officer Baciu did not recall if any alcohol was found, Officer Cruz recovered a Springfield XD-9-millimeter semiautomatic pistol. Officer Baciu testified that the gun was found "[a]pproximately where

Harvey was reaching in between the drive[r]'s seat and passenger's seat under a removable object," in an area that was immediately accessible to him.

¶ 5        Officer Baciu also testified that he had the following exchange with Harvey regarding his possession of a Firearm Owner Identification card (FOID card) or a CCL:

"Q. Officer did you ask whether the defendant had a FOID or CCL?

A. I did.

Q. And what did the defendant respond with?

A. He related that he did not.

Q. Did not?

A. Possess either one.

Q. A FOID or CCL?

A. Correct."

On cross-examination, Officer Baciu acknowledged that he never saw a firearm in Harvey's hands and that Harvey never made any admission that he possessed the firearm found in the van.

¶ 6        Officer Cruz similarly testified regarding Harvey's possession of a FOID card and CCL:

"Q. Officer, did you ask whether the defendant had a FOID or a CCL?

A. Yes, and he said no.

Q. He said no to what?

A. No to the CCL and the FOID."

On cross-examination, Officer Cruz also acknowledged that he never saw a firearm in Harvey's hand or on his person. Although the gun recovered from the van was sent for fingerprinting, the officers had no knowledge of any prints being recovered.

- 3 -

¶ 7 The trial court found Harvey guilty of UUW under section 24-1(a)(10)(iv) of the Code. In so finding, the trial court noted that the firearm was recovered from Harvey's immediate vicinity, in an area of the van to which Harvey had made a furtive movement after the officers' emergency equipment was activated. This was sufficient, according to the court, to establish Harvey's constructive possession of the weapon on a public street. The court did not mention Harvey's statements regarding his lack of a CCL. The trial court sentenced Harvey to 30 days in jail, with time considered served.

¶ 8 On appeal, Harvey contended the evidence was insufficient to prove his constructive possession of the weapon recovered from the van. Harvey also contended the State did not establish the *corpus delicti* of the offense because the State failed to corroborate his statement to the police that he did not possess a CCL.

¶ 9 With one justice dissenting, the appellate court affirmed the judgment of the trial court. 2022 IL App (1st) 211242-U. The appellate court first found that Harvey's "furtive movement coupled with the subsequent recovery of the pistol was sufficient evidence, if not overwhelming evidence," to prove his constructive possession of the firearm. *Id.* ¶ 13. The court then rejected Harvey's *corpus delicti* argument, finding that Harvey's admission that he lacked a CCL was corroborated by his "furtive movement to conceal the pistol after the officers activated their emergency equipment," given that "an individual with a CCL would not have behaved in this manner." *Id.* ¶ 18.

¶ 10 We granted Harvey's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 11                                  ANALYSIS

¶ 12 At issue in this appeal is Harvey's conviction under section 24-1(a)(10)(iv) of the Code. That provision states, in pertinent part:

"(a) A person commits the offense of unlawful use of a weapon when he knowingly:

* * *

- 4 -

(10) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, *** any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a) (10) does not apply to or affect transportation of weapons that meet one of the following conditions:

* * *

(iv) are carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act." 720 ILCS 5/24-1(a)(10)(iv) (West 2018).

¶ 13    In this court, Harvey does not challenge the trial court's finding that he was in constructive possession of a firearm on a public street at the time of the traffic stop. Instead, Harvey focuses on the concealed carry exception set forth in subsection (a)(10)(iv) of the statute. Harvey contends that, to sustain his conviction for UUW, the State had to prove that he did not fall within the concealed carry exception by showing he had not been *issued* a currently valid CCL at the time of the stop. According to Harvey, the State's evidence in this case fell short of that threshold, and therefore, his conviction should be reversed.

¶ 14    The State, in response, does not dispute that it had the burden of showing that Harvey did not fall within the concealed carry exception under subsection (a)(10)(iv). See *People v. Laubscher*, 183 Ill. 2d 330, 335 (1998) ("When an exception appears as part of the body of a substantive offense, the State bears the burden of disproving the existence of the exception beyond a reasonable doubt in order to sustain a conviction for the offense."). However, the State contends it was not required to show that Harvey had not been issued a currently valid CCL. Instead, according to the State, to establish that Harvey did not fall within the concealed carry exception, it only had to show that Harvey failed to *produce* a CCL at the time of the traffic stop.

¶ 15    In support of this argument, the State notes that subsection (a)(10)(iv) states that the concealed carry exception only applies if the firearm is "carried or possessed in accordance with the Firearm Concealed Carry Act." 720 ILCS 5/24-1(a)(10)(iv) (West 2018). The State further notes that the Firearm Concealed Carry

Act (Carry Act) (430 ILCS 66/1 *et seq.* (West 2018)) requires that a licensee possess his or her CCL while carrying a concealed firearm and, if a law enforcement officer initiates an investigative stop while the firearm is being carried, that the licensee present the CCL to the officer. *Id.* § 10(g), (h). From this, the State reasons that it may prove that the concealed carry exception in subsection (a)(10)(iv) does not apply by simply showing that a defendant, such as Harvey in this case, did not present his or her CCL to the investigating officer at the time of the stop. We disagree.

¶ 16        The State's argument is refuted by the plain language of the Carry Act. Section 70(f) of the Carry Act provides:

> "A licensee convicted or found guilty of a violation of this Act who has a valid license and is otherwise eligible to carry a concealed firearm shall only be subject to the penalties under this Section and shall not be subject to the penalties under *** paragraph *** (10) of subsection (a) of Section 24-1 *** of the Criminal Code of 2012." *Id.* § 70(f).

In section 70(f) of the Carry Act, the legislature specifically exempted any person who has a valid CCL from prosecution under section 24-1(a)(10) of the UUW statute. It follows, therefore, that the *only* individuals who could potentially face liability under section 24-1(a)(10) of the UUW statute are those persons who do *not* have a valid CCL. Thus, it was not enough for the State to show that Harvey did not present a CCL at the time of the stop. To establish liability under section 24-1(a)(10) and to meet its burden of showing that the concealed carry exception did not apply, the State had to show that Harvey had not been issued a valid CCL.

¶ 17        The differing penalties for violating the UUW statute and the Carry Act further confirm this conclusion. A violation of the UUW statute is a Class A misdemeanor (720 ILCS 5/24-1(b) (West 2018)) with a maximum penalty of less than one year of imprisonment (730 ILCS 5/5-4.5-55(a) (West 2018)). A violation of the Carry Act, in contrast, is a Class B misdemeanor (430 ILCS 66/70(e) (West 2018)) with a maximum penalty of less than six months' imprisonment (730 ILCS 5/5-4.5-60(a) (West 2018)). The legislature understandably defined the more serious offense (possession of a firearm on a public street by a person having no valid CCL at all) as a violation of the UUW statute, thereby giving that offense a more serious penalty. The less serious offense (possession of a firearm on a public street by a

person with a valid CCL who simply left the license at home) was placed under the Carry Act and thereby given a lesser penalty. For these reasons, we agree with Harvey that, to prove the offense of UUW under section 24-1(a)(10)(iv), the State was required to show that he had not been issued a currently valid CCL.

¶ 18    Harvey contends the State failed to make that showing in this case. Harvey notes that the arresting officers in this case did not specifically ask him if he had been issued a currently valid CCL. Further, the State did not present any testimony or documentary evidence indicating that Harvey had not been issued a CCL. According to Harvey, his responses to the police officers showed only that he did not have a CCL on his person at the time of the traffic stop, not that he had never been issued one at all. Thus, Harvey contends the evidence was insufficient to support his conviction. We disagree.

¶ 19    When reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. In making this determination, we review the evidence in the light most favorable to the prosecution. *Id.* This means that all reasonable inferences from the record in favor of the prosecution will be allowed. *Id.*

¶ 20    Viewing the evidence in the light most favorable to the State, the trial court in this case could reasonably have construed Harvey's answers to the police officers' questions as confirmation that he had not been issued a CCL. As various authorities have noted, it is reasonable to assume that an innocent person, when speaking to the police and aware that his conduct is being challenged, will offer an explanation for that conduct if one is available. 2 Wayne R. LaFave, Search and Seizure § 3.6(f) (6th ed. 2020). Harvey did not do that here, although he had the opportunity to do so. A reasonable inference to be drawn, therefore, is that Harvey was unable to offer an explanation because he did not, in fact, own a valid CCL. See, *e.g.*, *People v. Grant*, 2014 IL App (1st) 100174-B, ¶ 26 (it "defies common sense to accept" that defendant would have "inexplicably passed up an opportunity to explain that he did in fact have a valid FOID card" where "[t]his explanation *** would have allowed him to extricate himself from what was, clearly, serious trouble for him"); *People v. McMichaels*, 2019 IL App (1st) 163053, ¶ 38. Further, to the extent there was any ambiguity or conflicting inferences to be drawn from Harvey's answers, that

was a matter to be resolved by the trial court as the trier of fact. *People v. Campbell*, 146 Ill. 2d 363, 380 (1992). Accordingly, we conclude the police officers' unchallenged testimony, when viewed in the light most favorable to the State, established that Harvey had not been issued a valid CCL.

¶ 21   Harvey also contends, in the alternative, that the State failed to establish the *corpus delicti* of the UUW offense because the only evidence that Harvey lacked a CCL came from his own out-of-court statements made to the police officers at the time of the traffic stop. We are not persuaded by this argument.

¶ 22   "The *corpus delicti* of an offense is simply the commission of a crime." *People v. Lara*, 2012 IL 112370, ¶ 17. Proof of an offense requires proof of the *corpus delicti*, as well as proof that the crime was committed by the person charged. *People v. McKown*, 2022 IL 127683, ¶ 45. As a general rule, the *corpus delicti* of an offense generally cannot be proven *solely* by a defendant's confession. *People v. Phillips*, 215 Ill. 2d 554, 576 (2005). The State must also provide independent, corroborating evidence that the crime occurred. *Id.*

¶ 23   The rule requiring corroborating evidence for the *corpus delicti* arises from a historical mistrust of extrajudicial confessions. *McKown*, 2022 IL 127683, ¶ 46; *People v. Sargent*, 239 Ill. 2d 166, 183 (2010). "That mistrust is generally attributed to: (1) some individuals' tendency to confess, for various psychological reasons, to offenses that they did not commit or that did not occur, and (2) the unreliability of coerced confessions." *Lara*, 2012 IL 112370, ¶ 19. An additional concern has sometimes been noted regarding the "the extreme difficulty" that a defendant may have "disproving his confession once it had been introduced in evidence." Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. Pa. L. Rev. 638, 642-43 (1955).

¶ 24   In this case, Harvey did not "confess" to the police that he committed the offense of UUW. That is, he did not make an extrajudicial statement admitting to all of the elements of that crime. See *People v. Georgev*, 38 Ill. 2d 165, 175 (1967) (noting the definition of the term "confession"). Rather, Harvey admitted to only *one* element of the UUW offense—not owning a valid CCL. In this court, Harvey does not acknowledge this distinction but, instead, essentially argues that all out-of-court admissions, as a matter of law, must be independently corroborated in order to form a part of the State's proof at trial.

¶ 25     This court has previously rejected that proposition. See *People v. Dalton*, 91 Ill. 2d 22 (1982); *People v. Manske*, 399 Ill. 176, 184-85 (1948). In *Dalton*, for example, the defendant was found guilty on two counts of indecent liberties with a child, where an element of the offense was that the defendant had to be 17 years of age or older. *Dalton*, 91 Ill. 2d at 24-25. At trial, the only evidence regarding the defendant's age was his own out-of-court statement made to an investigating officer. *Id.* at 25. Invoking the *corpus delicti* rule, the defendant maintained that his conviction had to be reversed because no independent, corroborating evidence had been offered by the State in support of his admission. *Id.* at 27-28. This court disagreed. *Id.* at 29.

¶ 26     This court explained that a defendant's statement regarding his age, "while perhaps technically an element of the corpus delicti of indecent liberties, is not subject to the same infirmities when admitted to by a defendant as are more subjective admissions." *Id.* Such a statement, this court stated, is "inherently more reliable than a statement of what one did, or saw, or heard, or thought because it is a statement of an immutable characteristic." *Id.* at 30. Moreover, a defendant's admission regarding his age is not subject to the "peculiar perceptions or recollections" of someone who is under the psychological pressure of a police investigation. *Id.*

¶ 27     This court concluded that

"where the [*corpus delicti*] rule may serve to guard against a possible miscarriage of justice in the instance of a forced confession or a 'confession' to a crime that has not been committed, it does not appear to us that this purpose is served by requiring corroboration of a defendant's admission of his age given in circumstances arousing no doubt of its reliability." *Id.*

Accordingly, this court held that the defendant's "statement was admissible without corroboration." *Id.*; see *Lara*, 2012 IL 112370, ¶ 30 ("*Dalton*'s holding that the element of age need not be independently corroborated, however, supports the general proposition that the *corpus delicti* rule does not universally mandate corroboration of every element of every charged offense.").

¶ 28     As in *Dalton*, we conclude that, in this case, Harvey's admission implicates none of the concerns behind the *corpus delicti* rule. Like admitting to one's age, an

admission that one does not own a CCL is the type of basic, objective, certain statement addressing information that is *personally* known to the declarant and is therefore "inherently more reliable than a statement of what one did, or saw, or heard." *Dalton*, 91 Ill. 2d at 30. An admission that one does not own a CCL is also unlikely to be the result of "peculiar perceptions or recollections" (*id.*) even under the pressure of a police investigation, and if such an admission is made in error, it can easily be corrected by a defendant at any time. Further, because the admission that one does not own a CCL constitutes only one element of the UUW offense under section 24-1(a)(10)(iv) of the Code, the State must still prove, by independent evidence, the additional elements of possessing a firearm on a public street. There is thus no concern that using Harvey's admission under these circumstances will result in a criminal conviction based *solely* on his own statements. See *Phillips*, 215 Ill. 2d at 576.

¶ 29 Accordingly, we hold that Harvey's admission that he had not been issued a valid CCL did not require independent corroboration under the *corpus delicti* rule. Therefore, the evidence adduced at trial was sufficient to sustain his conviction.

¶ 30                                                              CONCLUSION

¶ 31 For the foregoing reasons, the judgment of the appellate court, affirming the judgment of the circuit court, is affirmed.

¶ 32 Judgments affirmed.

¶ 33 JUSTICE NEVILLE, specially concurring:

¶ 34 While I find the majority opinion reaches the correct result in this case, I disagree with the majority's holding on the question of statutory interpretation. Harvey was convicted of unlawful use of a weapon (UUW) (720 ILCS 5/24-1(a)(10)(iv) (West 2018)). Under the UUW statute, the State must initially prove that a defendant knowingly carried or possessed a firearm on or about his or her person upon any public street. 720 ILCS 5/24-1(a)(10) (West 2018) ("A person commits the offense of unlawful use of weapons when he knowingly *** [c]arries

- 10 -

or possesses on or about his or her person, upon any public street, *** any pistol, revolver, stun gun, or taser or other firearm ***."). Harvey does not challenge the sufficiency of the evidence on this element where the evidence established that a semiautomatic pistol was found within the vehicle in an area immediately accessible to Harvey.

¶ 35 Next, the State must prove the nonexistence of the following fact: the weapon was carried or possessed "in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act." *Id.* § 24-1(a)(10)(iv) ("[E]xcept that this subsection (a) (10) does not apply to or affect transportation of weapons that meet one of the following conditions: *** (iv) are carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act."). "To be 'in accordance' with a statute means to be in agreement or conformance with that law." *People v. Webb*, 2019 IL 122951, ¶ 18. In short, if that fact exists—the weapon was carried or possessed in accordance with the Carry Act (430 ILCS 66/1 *et seq.* (West 2018)) by a person who has been issued a currently valid license under the Carry Act—section 24-1(a)(10) does not apply.

¶ 36 To prove the nonexistence of this fact, the majority opinion holds that the State "had to show that Harvey had not been issued a valid CCL." *Supra* ¶ 17. I disagree with the majority opinion's holding for three reasons.

¶ 37 First, the majority opinion writes out of the statute the phrase "in accordance with the Firearm Concealed Carry Act." This interpretation violates two tenets of statutory interpretation, namely, that a statute should be given its plain and ordinary meaning and that each word and phrase in a statute should be given effect. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990) ("[W]here an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express."); *Haage v. Zavala*, 2021 IL 125918, ¶ 44 ("Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous."). Under the majority opinion's holding, the exception in effect reads: the weapon was carried or possessed "by a person who has been issued a currently valid license under the Firearm Concealed

- 11 -

Carry Act." In my view, under the plain language of the statute, the State could prove that the firearm was not carried or possessed (1) "in accordance with the Firearm Concealed Carry Act" or (2) "by a person who has been issued a currently valid license under the Firearm Concealed Carry Act."

¶ 38   It is helpful to look at a neighboring provision, which establishes that the State may disprove either of the two necessary prerequisites to the exception's applicability. For example, section 24-1(a)(10)(iii) requires the State to disprove the following: the weapon was carried or possessed "unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1(a)(10)(iii) (West 2018). It would seem indisputable that, if the State proved beyond a reasonable doubt that the weapon was loaded, the State has disproved the exception. In other words, just like the neighboring subsection (a)(10)(iv) at issue here, the State could prove that the weapon was not "unloaded and enclosed in a case, firearm carrying box, shipping box, or other container" or that the weapon was not carried "by a person who has been issued a currently valid Firearm Owner's Identification Card." *Id.*

¶ 39   Both subsections (a)(10)(iii) and (a)(10)(iv) contain two factual predicates. One describes the nature of the carry or possession (*i.e.* unloaded and enclosed in a case or in accordance with the Carry Act), and one describes the status of the person carrying or possessing (*i.e.*, by a person who has been issued a currently valid Firearm Owner's Identification card or by a person who has been issued a currently valid license under the Carry Act). Both factual predicates must exist for the exception to apply. Therefore, the lack of either factual predicate establishes that the exception does not apply.

¶ 40   Relevant here, the State proved that Harvey did not possess his weapon in accordance or in agreement with the Carry Act because he did not possess a concealed carry license (CCL) at the time he carried a concealed firearm. See 430 ILCS 66/10(g) (West 2018) ("A licensee shall possess a license at all times the licensee carries a concealed firearm ***.").

¶ 41   Second, the majority opinion does not address section 24-2, titled "Exemptions." 720 ILCS 5/24-2 (West 2018). Section 24-2(a-5) provides: "Subsections 24-1(a)(4) and 24-1(a)(10) do not apply to or affect any person

carrying a concealed pistol, revolver, or handgun and the person has been issued a currently valid license under the Firearm Concealed Carry Act at the time of the commission of the offense." *Id.* § 24-2(a-5). In short, section 24-2(a-5) exempts those with a currently valid CCL from punishment under section 24-1(a)(10).

¶ 42    Section 24-2(h) provides: "An information or indictment based upon a violation of any subsection of this Article need not negative any exemptions contained in this Article. The defendant shall have the burden of proving such an exemption." *Id.* § 24-2(h). Therefore, the statute clearly provides that the defendant has the burden of proving the presence of a currently valid CCL. See *People v. Smith*, 71 Ill. 2d 95, 105-06 (1978) (interpreting section 24-2 and holding that "the State need never negate any exemption"); see also *People v. Tolbert*, 2016 IL 117846, ¶ 17 (interpreting section 24-2 and holding "[i]t was therefore incumbent on the defendant to prove his entitlement to the exemption").

¶ 43    Third, the legislature knows how to make the lack of a currently valid CCL an element of an offense. "It is well established that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999). In the aggravated unlawful use of a weapon (AUUW) statute, the State must prove, aside from the knowing possession of a weapon in a particular area, that "the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense *and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act*." (Emphasis added) 720 ILCS 5/24-1.6(a)(3)(A-5) (West 2018). Under this provision, the burden of proof is clearly on the State to prove that the defendant had not been issued a currently valid CCL at the time of the offense.

¶ 44    In short, both the plain language and a contextual reading of the UUW statute establish that the State is not required to prove the lack of a currently valid CCL as an element of the offense. To be sure, the State could prove the lack of a currently valid CCL at the time of the offense. But the State could also prove that the weapon was not carried "in accordance with the Firearm Concealed Carry Act." See *id.* § 24-1(a)(10)(iv). The burden would then shift to the defendant to prove that he had a currently valid CCL at the time of the offense. *Id.* § 24-2(a-5), (h).

¶ 45　　　The majority opinion, instead of interpreting the plain language of sections 24-1(a)(10)(iv) and 24-2(a-5) of the UUW statute, relies on the Carry Act. *Supra* ¶ 16. I do not dispute the general proposition taken from the Carry Act analysis, namely, that "the *only* individuals who could potentially face liability under section 24-1(a)(10) of the UUW statute are those persons who do *not* have a valid CCL." (Emphases in original.) *Supra* ¶ 16; see 430 ILCS 66/70(f) (West 2018) ("A licensee convicted or found guilty of a violation of this Act who has a valid license and is otherwise eligible to carry a concealed firearm shall only be subject to the penalties under this Section and shall not be subject to the penalties under *** paragraph *** (10) of subsection (a) of Section 24-1 ***.").

¶ 46　　　However, only the UUW statute specifies the procedure for that result. Based on the plain language of the UUW statute, if the State proves that the defendant did not carry or possess the weapon in accordance with the Carry Act, then it is the defendant's burden to prove that he had a valid CCL at the time of the offense. See 720 ILCS 5/24-2(a-5), (h) (West 2018). As the UUW statute is more specific, it controls over the more general provision in the Carry Act. See *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 45 ("[M]ore-specific statutes control over general acts.").

¶ 47　　　In sum, the majority's holding is inconsistent with our precedent on statutory interpretation. Most importantly, the majority's interpretation is inconsistent with the plain language of the statute. The majority's holding both reads out of the UUW statute the phrase "in accordance with the Firearm Concealed Carry Act" and renders inoperable the exemption provisions providing that a defendant bears the burden of proving the presence of a currently valid CCL. The majority also violates the interpretative tool that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended. Finally, the majority's interpretation disregards the statutory interpretation canon that the more specific statute (UUW) controls over the more general statute (Carry Act). For the aforementioned reasons, I respectfully specially concur in the majority opinion's decision to affirm the appellate court's judgment.

¶ 48　　　JUSTICE ROCHFORD joins in this special concurrence.

¶ 49　　　JUSTICE O'BRIEN, specially concurring:

¶ 50 I agree with the majority's holding that the State bears the burden of proving that defendant had not been issued a valid concealed carry license (CCL). *Supra* ¶ 16. I also agree with the majority's holding that, when viewing the evidence in the light most favorable to the State, the trial court could reasonably have construed defendant's response of "no" to the police officers' inquiry as an incriminating admission establishing that he had not been issued a CCL. *Supra* ¶ 18. I write separately, however, to address the majority's finding that the *corpus delicti* rule does not require the State to present independent evidence corroborating this admission. *Supra* ¶ 29.

¶ 51 The majority's reasoning represents a drastic departure from well-settled precedent in which this court has repeatedly held that the *corpus delicti* cannot be proven by a defendant's confession, admission, or out-of-court statement alone. See *People v. Lara*, 2012 IL 112370, ¶ 17; *People v. Cloutier*, 156 Ill. 2d 483, 503 (1993); *People v. Furby*, 138 Ill. 2d 434, 446 (1990); *People v. Willingham*, 89 Ill. 2d 352, 358-59 (1982); *People v. Pry*, 38 Ill. 2d 261, 263 (1967); *People v. Lueder*, 3 Ill. 2d 487, 488 (1954); *People v. Hein*, 315 Ill. 76, 82 (1924); *Williams v. People*, 101 Ill. 382, 386 (1882); *Bergen v. People*, 17 Ill. 426, 429 (1856). The majority's opinion also operates to further expand what is intended to be a narrow exception to this well-settled precedent. See *People v. Dalton*, 91 Ill. 2d 22 (1982). Such an expansion is improper considering our adherence to this precedent over the years, the well-reasoned policy behind the *corpus delicti* rule, and the fact that the application of the *Dalton* exception is limited to "immutable personal characteristics," which the case before us does not present. *Lara*, 2012 IL 112370, ¶ 30 (citing *Dalton*, 91 Ill. 2d at 30). Furthermore, a review of the record reveals that the State did in fact present corroborating circumstantial evidence independent of defendant's incriminating admission. Accordingly, I would affirm defendant's conviction not on the majority's novel basis that corroborating evidence was simply unnecessary here but, instead, on the factual basis that the State established the *corpus delicti* through independent circumstantial evidence that corroborated defendant's incriminating admission. Such a holding is supported by both our precedent and the record before us.

¶ 52 *Corpus delicti* is a Latin phrase that translates to the " 'body of the crime.' " Black's Law Dictionary (12th ed. 2024). As noted above, the *corpus delicti* rule stands for the proposition that the *corpus delicti* cannot be proven by a defendant's

confession, admission, or out-of-court statement alone. See *Lara*, 2012 IL 112370, ¶ 17; *Cloutier*, 156 Ill. 2d at 503; *Furby*, 138 Ill. 2d at 446; *Willingham*, 89 Ill. 2d at 358-59; *Pry*, 38 Ill. 2d at 263; *Lueder*, 3 Ill. 2d at 488; *Hein*, 315 Ill. at 82; *Williams*, 101 Ill. at 386; *Bergen*, 17 Ill. at 429. This rule has "ancient roots, first appearing more than 'three hundred years ago in England to prevent the conviction of those who confessed to nonexistent crimes as a result of coercion or mental illness.' " Samuel A. Thumma & Roger E. Brodman, *On "Vague Latin Phrases" and Criminal Confessions:* Corpus Delicti*, Trustworthiness, and Corroboration, and the Federal Rules of Evidence*, 114 J. Crim. L. & Criminology 105, 107 (2024) (quoting David A. Moran, *In Defense of the Corpus Delicti Rule*, 64 Ohio St. L.J. 817, 817 (2003)). In today's diverse and global society, however, the rule now serves to not only protect against wrongful convictions resulting out of coercion or mental illness but also scenarios involving language or communication barriers between the authorities and the defendant. These barriers often result in limitations that create confusion or prevent comprehension at a time when someone's very liberty is at stake. While the most obvious example of a language or communication barrier is an individual with limited English proficiency,[1] there are several other examples such as individuals with unique dialects or accents, individuals who are deaf or hard of hearing, or individuals who do not share the same literacy or vocabulary level as the authorities questioning them. See generally, Myasar Ihmud, *Lost in Translation: Language Barriers to Accessing Justice in the American Court System*, 56 UIC L. Rev. 669 (2023). Furthermore, individuals with autism and other developmental or intellectual disabilities often have challenges with social communication and social interactions. They may have deficits in expressive language or receptive language. The *corpus delicti* rule acts to guard against each one of these scenarios.

¶ 53        Because the majority initially states that defendant's "admission implicates none of the concerns behind the *corpus delicti* rule" (*supra* ¶ 28) and generically notes that the rule does not apply because defendant did not " 'confess' " to every element of the unlawful use of a weapon offense (*supra* ¶ 24), I believe it is

---

[1]While English is the predominant language of 78.4% of those living in the United States, the remaining 21.6% speak only Spanish (13.2%), other Indo-European languages (3.8%), Asian and Pacific Islander languages (3.5%), or another language (1.2%). Myasar Ihmud, *Lost in Translation: Language Barriers to Accessing Justice in the American Court System*, 56 UIC L. Rev. 669, 673-74 (2023).

important to further review the overarching purpose and scope of the rule. The majority's conclusory statement regarding the rule's "concerns" ignores the fact that the rule protects the administration of the criminal law against errors in convictions based upon untrue confessions, admissions, or out-of-court statements. *Warszower v. United States*, 312 U.S. 342, 347 (1941); see *Lara*, 2012 IL 112370, ¶ 17. This is the overarching purpose of the rule, which the majority's opinion directly contravenes. A defendant does not need to argue his confession, admission, or statement is untrue for the *corpus delicti* rule to apply. Instead, the rule is general in nature and protects against a potential miscarriage of justice by requiring the State to adequately corroborate a defendant's incriminating admission in order to permit the trier of fact to consider the admission, along with the corroborating evidence, when deciding if the State met its burden of proof in establishing the *corpus delicti* of the charged offense. See *Lara*, 2012 IL 112370, ¶ 53.

¶ 54    The majority proceeds in error by broadly stating that the rule does not apply to the instant case because defendant did not "confess" to every element of unlawful use of a weapon. *Supra* ¶ 24. The majority fails to cite any *corpus delicti* case in support of this statement. The sole case it does cite (*People v. Georgev*, 38 Ill. 2d 165 (1967)) instead involved an evidentiary dispute as to whether a defendant's oral statements were admissible into evidence where the State failed to provide him with a written copy of his statements. See *supra* ¶ 24. Specifically, the defendant in *Georgev* argued "that because the Illinois statutory requirements were not met the statements should not have been admitted into evidence." *Georgev*, 38 Ill. 2d at 174. While analyzing this precise argument, the *Georgev* court discussed the distinction between confessions and admissions against interest. *Id.* at 175-76. The evidentiary question depended on the distinction because, if the statement were considered a confession, defendant was entitled to copies of those statements along with the names and addresses of persons present. However, if the statement merely constituted a statement against interest, defendant was not entitled to the same. Here, the *corpus delicti* rule is not an evidentiary rule but, instead, a question of proof that demands the State to establish the *corpus delicti* through independent evidence that corroborates defendant's incriminating admission. It appears, however, that the majority's citation of *Georgev* intends to infer that the *corpus delicti* rule is merely intended to protect against a stand-alone *confession*, while an *incriminating admission*, provided during an investigatory stop, may be sufficient to sustain a judgment of conviction without corroboration. This cannot be so, as the

latter carries with it the same potential injustice at trial as the former does. The United States Supreme Court has explained:

> "The need for corroboration extends beyond complete and conscious admission of guilt—a strict confession. Facts admitted that are immaterial as to guilt or innocence need no discussion. But statements of the accused out of court that show essential elements of the crime, here payment of money, necessary to supplement an otherwise inadequate basis for a verdict of conviction, stand differently. Such admissions have the same possibilities for error as confessions. They, too, must be corroborated." *Opper v. United States*, 348 U.S. 84, 91 (1954).

See *Lara*, 2012 IL 112370, ¶ 17 (stating: "In general, the *corpus delicti* cannot be proven by a defendant's *admission*, confession, *or out-of-court statement* alone." (Emphases added.)).

¶ 55 The above reasoning illustrates just how imperative it is for courts to guard against a possible miscarriage of justice in the instance of an untrue confession, admission, or incriminating statement. This court has consistently upheld the rule's foundational principle that the *corpus delicti* cannot be proven by a defendant's confession, admission, or out-of-court statement alone. See *Lara*, 2012 IL 112370, ¶ 17; *Cloutier*, 156 Ill. 2d at 503; *Furby*, 138 Ill. 2d at 446; *Dalton*, 91 Ill. 2d at 30; *Willingham*, 89 Ill. 2d at 358-59; *Pry*, 38 Ill. 2d at 263; *Lueder*, 3 Ill. 2d at 488; *Hein*, 315 Ill. at 82; *Williams*, 101 Ill. at 386. We have also clarified that circumstantial evidence may satisfy the rule's requirement that a defendant's confession, admission, or out-of-court statement be corroborated. *Lara*, 2012 IL 112370, ¶ 45; *People v. Bounds*, 171 Ill. 2d 1, 44 (1995); *Cloutier*, 156 Ill. 2d at 504; *Furby*, 138 Ill. 2d at 451-53; *People v. Underhill*, 38 Ill. 2d 245, 253-54 (1967). Likewise, we have clarified that the corroborating evidence does not need to independently provide proof beyond a reasonable doubt (*Lara*, 2012 IL 112370, ¶ 18; *Willingham*, 89 Ill. 2d at 358-59; *People v. Perfecto*, 26 Ill. 2d 228, 229 (1962)), nor does it need to corroborate every element of the charged offense (see *Lara*, 2012 IL 112370, ¶ 65; *Dalton*, 91 Ill. 2d at 30). The corroborating evidence is also not required to perfectly align with the details of a defendant's confession, admission, or out-of-court statement. *Lara*, 2012 IL 112370, ¶ 50; *Cloutier*, 156 Ill. 2d at 503; *Furby*, 138 Ill. 2d at 450-51; *Willingham*, 89 Ill. 2d at 359. Instead, the

independent evidence need only provide some corroboration that tends to confirm or strengthen defendant's confession, admission, or out-of-court statement. *Lara*, 2012 IL 112370, ¶ 42; *Furby*, 138 Ill. 2d at 451-52.

¶ 56        Today, the majority chooses to ignore the entirety of this established precedent and arbitrarily decides that defendant's incriminating roadside admission did not require independent corroboration under the *corpus delicti* rule. See *supra* ¶ 29. As a result, the majority's opinion upholds defendant's conviction solely upon the fact that defendant responded "no" to the officers' investigatory inquiry. Our precedent, however, makes clear that simply responding "no" to an officers' inquiry, without independent evidence to corroborate defendant's admission, is insufficient, standing alone, to support defendant's conviction. But rather than rely on established precedent, the majority relies exclusively upon *Dalton*. Not only is *Dalton* readily distinguishable from the instant case, but the majority's reliance upon *Dalton* directly conflicts with our subsequent holding in *Lara*, where we explained that *Dalton* represents a narrow exception to the *corpus delicti* rule.

¶ 57        The issue in *Lara* was whether the *corpus delicti* rule requires independent evidence corroborating every element of the specified offense before a defendant's confession could be used to prove the *corpus delicti* of the offense. *Lara*, 2012 IL 112370, ¶ 15. The defendant in *Lara* cited *Dalton* in support of his argument that "his [predatory criminal sexual assault] convictions must be reduced to [aggravated criminal sexual abuse] because no corroborating evidence supports the single element, sexual penetration, that distinguishes [aggravated criminal sexual abuse] from [predatory criminal sexual assault]." (Internal quotation marks omitted.) *Id.* ¶ 16. In reviewing defendant's claims, we offered the following discussion with respect to *Dalton*.

> "In *Dalton*, the defendant was found guilty of two counts of indecent liberties with a child, but the appellate court reversed the convictions, finding that the State had not sufficiently established an essential element of the offenses, *i.e.*, his age. At trial, the only evidence of the defendant's age was his statement to an investigating officer. No corroborating evidence was offered. [Citation.] The defendant argued that the courts in *Wistrand v. People*, 213 Ill. 72 (1904), and *People v. Rogers*, 415 Ill. 343 (1953), reversed convictions that included age as

an element because the only proof of age was the defendants' out-of-court statements, violating the *corpus delicti* rule.

Modifying the holdings in *Wistrand* and *Rogers*, the court in *Dalton* changed the rule 'as it holds that age is subject to the corroboration requirement' to allow the jury's observation of the defendant to provide sufficient independent corroboration of his age. [Citation.] We noted that the rationale behind the historical mistrust of extrajudicial confessions underlying the corroboration rule would not 'be served by applying it in [those] circumstances,' because the element of age was 'not subject to the same infirmities when admitted to by a defendant as are more subjective admissions.' [Citation.] A defendant's statement about his age 'appears to be inherently more reliable *** because it is a statement of an immutable characteristic.' [Citation.] Thus, we concluded that the defendant's statement of his age was admissible without corroboration. [Citation.]

***

We are not persuaded by defendant's interpretation of *Dalton* and do not find it dispositive in this case. The holding in that case was *narrowly tailored to decide the precise issue before the court, namely, the need to corroborate the immutable characteristic of age*. Thus, the rationale in *Dalton* is applicable when an immutable characteristic is both an essential element of an offense and evinced only by the defendant's out-of-court statements. *Dalton*'s holding was designed to modify the *Wistrand* and *Rogers* rule *only* to the extent that the rule required corroboration of elements that were also immutable characteristics. [Citation.] *Dalton offers no guidance in applying the* corpus delicti *rule in the instant case that does not involve immutable personal characteristics*. Contrary to defendant's assertion, *Dalton* should not be construed as implicitly requiring full corroboration of all other elements as well. *Dalton*'s holding that the element of age need not be independently corroborated, however, supports the general proposition that the *corpus delicti* rule does not universally mandate corroboration of every element of every charged offense." (Emphases in original and added.) *Id.* ¶¶ 27-30.

¶ 58   Unlike an individual's date of birth, defendant's response of "no" to the officers' investigatory inquiry as to whether defendant "possessed" a CCL does not

constitute an "immutable personal characteristic." In holding otherwise, the majority ignores the fact that the *Dalton* court expressly set out several additional examples of what may constitute an "immutable personal characteristic." Specifically, the court stated: "[A]n immutable characteristic" "is much more similar to personal characteristics such as fingerprints, handwriting, blood type or voice pattern." *Dalton*, 91 Ill. 2d at 30. Significantly, all these personal characteristics are unambiguous, incapable of change, and are unique to every individual human being. A generic response of "no" to an officer's investigatory inquiry does not fall within the purview of any of the examples referenced in *Dalton*. Moreover, as the majority correctly notes, it was not enough for the State to show that defendant did not present a CCL at the time of the stop, but instead, it was required to establish that defendant had not been issued a CCL. *Supra* ¶ 16. The officers' investigatory inquiry as to whether defendant "possessed" a CCL further illustrates the distinction between the "immutable characteristic[s]" referenced in *Dalton* and defendant's generic response to the officers' inquiry here. For example, the officers' inquiry was broad enough to capture two distinct possibilities—that defendant did not "possess" the CCL as meaning he did not have a CCL at all, or it can be interpreted to mean that defendant did not have a CCL on his person at the time of the investigatory stop.[2] "*Dalton* offers no guidance in applying the *corpus delicti* rule in the instant case that does not involve immutable personal characteristics." *Lara*, 2012 IL 112370, ¶ 30.

¶ 59        For more than 150 years, we have held that the *corpus delicti* cannot be proven by a defendant's confession, admission, or out-of-court statement alone. See *id.*

---

[2]Again, I agree with the majority that, when viewed in the light most favorable to the State, the trial court could reasonably have construed defendant's generic response of "no" as an incriminating admission establishing that he had not been issued a CCL. That said, the trial court could just have easily construed defendant's generic response to represent that defendant merely did not have a CCL on his person at the time of the investigatory stop. This question was one to "be resolved by the fact finder, who has exclusive responsibility for determining the credibility of the witnesses, evaluating conflicts in the evidence, and drawing reasonable inferences from that evidence." *Lara*, 2012 IL 112370, ¶ 63. At the appellate level, the standard of review governs review of this determination; however, my discussion regarding the broadness of the officers' inquiry and the generic nature of defendant's response here is directed only toward illustrating the distinction between the present case and the "immutable characteristics" addressed in *Dalton*.

¶ 17; *Cloutier*, 156 Ill. 2d at 503; *Furby*, 138 Ill. 2d at 446; *Willingham*, 89 Ill. 2d at 358-59; *Pry*, 38 Ill. 2d at 263; *Lueder*, 3 Ill. 2d at 488; *Hein*, 315 Ill. at 82; *Williams*, 101 Ill. at 386; *Bergen*, 17 Ill. at 429. *Dalton* expressly reaffirmed this precedent while creating a narrow exception to it. *Dalton*, 91 Ill. 2d at 30. *Lara* subsequently reaffirmed this precedent again (*Lara*, 2012 IL 112370, ¶ 17) while also emphasizing the narrowness of the *Dalton* exception (*id.* ¶ 30). The majority's opinion now not only ignores our well-established precedent regarding the *corpus delicti* rule but also directly conflicts with the underlying reasoning set forth in both *Dalton* and *Lara*. The opinion therefore prompts the question—If an officer broadly asks an individual previously convicted of a sex offense whether the individual registered as a sex offender or reported an address change, and the individual generically responds "no," is that singular response enough to support a conviction under the Sex Offender Registration Act? See 730 ILCS 150/1 *et seq.* (West 2022). Likewise, what about generic responses to an officer's broad query during an investigatory stop whether the driver possesses a driver's license? Or an officer broadly asking a firearm owner during a search of his residence whether he possesses a Firearm Owner's Identification card (430 ILCS 65/10 (West 2022))? The hypothetical questions are endless. While these questions are not before us today, they do illustrate the potential consequences and confusion created by the majority's analysis moving forward.

¶ 60    Unlike the majority, I adhere to and reaffirm our *corpus delicti* precedent and the underlying reasoning set forth in both *Dalton* and *Lara*. Thus, I hold that the *corpus delicti* rule required the State to present independent evidence corroborating defendant's incriminating admission. I reiterate that the independent evidence may be circumstantial in nature and need not independently establish proof beyond a reasonable doubt. *Lara*, 2012 IL 112370, ¶ 18; *Bounds*, 171 Ill. 2d at 44; *Cloutier*, 156 Ill. 2d at 504; *Furby*, 138 Ill. 2d at 451-53; *Willingham*, 89 Ill. 2d at 358-59; *Underhill*, 38 Ill. 2d at 253-54; *Perfecto*, 26 Ill. 2d at 229. Instead, the evidence need only corroborate or strengthen defendant's admission. *Lara*, 2012 IL 112370, ¶ 42; *Furby*, 138 Ill. 2d at 451-52. Defined more precisely, sufficient corroboration is " '*evidence *** which tends to connect the defendant with the crime.*' " (Emphasis added and in original.) *Lara*, 2012 IL 112370, ¶ 44 (quoting *Willingham*, 89 Ill. 2d at 359). For example, in *Bounds* we held the *corpus delicti* rule was satisfied where the undressed condition of the victim's body sufficiently corroborated defendant's confession to sexually assaulting the victim. Specifically,

we found that, "[w]hile not conclusive proof that an act of penetration occurred, the undressed condition of the body tended to show that the victim was sexually assaulted." *Bounds*, 171 Ill. at 44.

¶ 61    Here, defendant provided the officers with an incriminating admission that, when viewed in the light most favorable to the State, establishes that he had not been issued a CCL. The testimony of Officers Baciu and Cruz tends to corroborate this admission and connect defendant with the unlawful use of a weapon offense. Officer Baciu testified that at the time of the incident he had been a police officer for "about four years." Baciu and his partner, Officer Cruz, were on routine patrol on February 19, 2021, when they observed a vehicle being driven with "an obstruction of view." The officers activated their "emergency equipment to curb the vehicle." After curbing the vehicle, Baciu "observed the front seat passenger which is the defendant make a movement towards the floor board of the van." Baciu reiterated that, as he approached the vehicle, he "observed defendant reach down towards the middle of the floor board of the van prior to stopping the vehicle." Defendant was seated in the front passenger seat. Upon reaching the vehicle, Officer Cruz smelled the "odor of an alcohol-like beverage inside of the vehicle," so the officers had defendant and the driver step out of the vehicle in order to conduct a search of the vehicle. Baciu testified, "as [defendant] stepped out I observed his pants were undone as if to conceal or remove an item from his pants." Baciu explained that Officer Cruz located a semiautomatic pistol in the vehicle. Baciu then inquired whether defendant had "a FOID or CCL," which defendant indicated he did not. On redirect examination, the following colloquy ensued:

"Q. Officer, you were asked about whether the gun was on the defendant at the time of the arrest. Just to be clear, where did you find the gun?

A. Approximately where he was reaching in between the drive[r]'s seat and passenger's seat under a removable object.

Q. Officer, would you say that it was in the immediate area of his surroundings?

A. It was.

- 23 -

> Q. And was it easily accessible to the defendant when you arrested him and found the gun?
>
> A. Yes, it was."

¶ 62 Officer Cruz testified that at the time of the incident he had been a police officer for "a little over four and a half years." Like Baciu, Cruz confirmed the location of the semiautomatic pistol, the movements defendant made toward the middle floorboard, and the fact that defendant's belt and pants were undone upon exiting the vehicle. Cruz further explained that based on his experience and training these facts "could mean one or two things. One he was trying to conceal something or the other trying to discard something if he had something located in his waistband." Cruz also clarified: "It was when we turned our emergency equipment on, as soon as we turned it on that's when the [defendant's] movement went towards the floor." Cruz also asked defendant whether he had a FOID or CCL, and defendant answered "no."

¶ 63 To summarize, the precise question regarding the application of the *corpus delicti* rule in this case is whether the State's independent evidence—the officers' testimony—adequately corroborated defendant's incriminating admission to permit the trier of fact to consider both in deciding if the State met its burden of proof in establishing the *corpus delicti* of unlawful use of a weapon. See *Lara*, 2012 IL 112370, ¶ 53. Consistent with the precedent discussed above, I agree with the appellate court majority's conclusion that defendant's admission was corroborated by his furtive movement to conceal the semiautomatic pistol immediately after the officers activated their emergency equipment. 2022 IL App (1st) 211242-U, ¶ 18. I also note the location where Officer Cruz discovered the pistol and the fact that defendant's belt and pants were undone upon exiting the vehicle, which based upon both officers' experience could mean that defendant was attempting to conceal the pistol. Also, relevant is the fact that defendant did not present a CCL to the officers, even when both officers inquired whether he possessed one. Nor did defendant request an opportunity to retrieve and produce an existing CCL. While these facts may independently fail to establish beyond a reasonable doubt that defendant had not been issued a CCL, they do constitute independent circumstantial evidence corroborating defendant's admission that he had not been issued a CCL. I emphasize:

"[C]orroboration is sufficient to satisfy the *corpus delicti* rule if the evidence, or reasonable inferences based on it, tends to support the commission of a crime that is at least closely related to the charged offense. Even if a defendant's confession involves an element of the charged offense, the independent evidence need not affirmatively verify those circumstances; rather, the evidence must simply 'correspond' with the confession." *Lara*, 2012 IL 112370, ¶ 45.

See *Willingham*, 89 Ill. 2d at 359; *Perfecto*, 26 Ill. 2d at 229.

¶ 64 Accordingly, I would hold that (1) the State bears the burden of proving that defendant had not been issued a CCL, (2) viewing the evidence in the light most favorable to the State, the trial court could reasonably have construed defendant's generic response of "no" to the police officers' investigatory inquiry as an incriminating admission establishing that he had not been issued a CCL, (3) the *corpus delicti* rule required the State to present independent evidence corroborating defendant's incriminating admission, and (4) the State established the *corpus delicti* through independent circumstantial evidence that corroborated defendant's incriminating admission.