2026 IL App (1st) 242349-U

No. 1-24-2349

Order filed June 12, 2026

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 02398 |
| | ) | |
| EBONY EDWARDS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held:* Defendant's conviction for aggravated battery is affirmed where, taking the testimony and video evidence together, a rational trier of fact could determine that defendant knowingly made contact of an insulting or provoking nature with a police officer.

¶ 2    Following a jury trial, defendant Ebony Edwards was convicted of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)) and sentenced to two years of probation

with community service. On appeal, defendant argues that the State failed to prove that she knowingly made physical contact of an insulting or provoking nature with the officer. We affirm.

¶ 3 Defendant was charged with multiple offenses arising from an incident on January 22, 2023. The State proceeded on two counts of aggravated battery (720 ILCS 5/12-3.05 (West 2022)). Count I alleged that defendant knowingly caused harm to Chicago police sergeant Guillermo Tellez-Sandoval by punching him, while count II alleged that defendant made physical contact "of an insulting or provoking nature" with Tellez-Sandoval.

¶ 4 Tellez-Sandoval testified that he travelled to the 6800 block of South Justine Street at approximately 3:40 p.m. on January 22, 2023, to support his tactical response team. There, he assisted in arresting an individual. After handcuffing the individual, Tellez-Sandoval noticed that the individual had dropped a cell phone. Tellez-Sandoval kneeled to retrieve the phone, and a woman approached and attempted to take the cell phone from him. In court, Tellez-Sandoval identified defendant as that woman.

¶ 5 When defendant reached for the phone, Tellez-Sandoval "grabbed the cell phone and then [defendant] punched [him] in [his] mouth." Tellez-Sandoval clarified that the interaction was brief: "Seconds, if that." He "instantly felt pain" around his two front teeth, and arrested defendant shortly thereafter.

¶ 6 Tellez-Sandoval stated that he and Chicago police officer Jason Davis initially pushed defendant away and then "gain[ed] control of her." They handcuffed her, and she was transported to the police station. Tellez-Sandoval did not immediately notice his front teeth were chipped, but soon "felt that they were broken." The next day, he saw his dentist to install two crowns on those teeth.

¶ 7    The State introduced several photographs which are included in the record on appeal, including images of Tellez-Sandoval's chipped front teeth. Tellez-Sandoval testified further that his teeth were not chipped prior to the incident, and that defendant caused his teeth to chip "when she hit [him] in the mouth."

¶ 8    The State next introduced video evidence, beginning with body-worn camera footage recorded by Tellez-Sandoval. That footage is included in the record on appeal and has been reviewed by this court. No sound from that video was played during trial. In the video, Tellez-Sandoval leaves his vehicle and approaches the porch of a house where people are watching uniformed officers restrain an individual. Tellez-Sandoval lifts that individual's legs while other officers move into frame and block the camera. At approximately one minute and thirty-three seconds, defendant (whom Tellez-Sandoval again identified in court) is visible a few feet away, apparently recording the incident with her phone. After that, police lift the arrested individual off the ground. At approximately one minute and forty-eight seconds, defendant walks past an officer, approaching Tellez-Sandoval. She reaches down to grab a smartphone on the ground, at which point Tellez-Sandoval's left arm enters the frame and appears to wave at defendant or push her away. Defendant stands just out of frame as Tellez-Sandoval picks up the smart phone. Tellez-Sandoval then moves closer to defendant, and the view is mostly obstructed as he seems to push defendant to a vehicle and handcuff her.

¶ 9    The State then introduced another silent video, recorded by a Police Observation Device (POD) camera. That footage is included in the record on appeal and has been reviewed by this court. The video depicts the occurrence from a vantage point down the block. Defendant's back is to the camera, and she leans in front of another individual while a group of people are gathered on

the stairs of a nearby porch. Several uniformed officers huddle at the foot of those stairs. Defendant stands as Tellez-Sandoval, in his uniform and tactical vest, leans into the group of officers. Tellez-Sandoval and other officers lift the arrested individual to his feet. As officers move the arrested individual from the foot of the stairs to the street, defendant steps past them and moves closer to Tellez-Sandoval. She reaches and leans down to the ground and then Tellez-Sandoval also leans down. Defendant then stands and her body blocks the view of Tellez-Sandoval's body while he also stands. The two are near each other, and defendant appears to briefly lean or gesture toward Tellez-Sandoval. An individual identified by Tellez-Sandoval as Davis then walks toward Tellez-Sandoval and, together, they push defendant against a wrought-iron fence. Tellez-Sandoval and Davis then move defendant to the hood of a nearby vehicle, where the view of defendant and Tellez-Sandoval is blocked by parked vehicles. Other police vehicles then arrive.

¶ 10    On cross-examination, Tellez-Sandoval testified that he could not remember whether he moved to prevent defendant from picking up the cell phone before she made physical contact with him, because "[i]t happened really fast." He completed a tactical response report relating to this incident, in which he checked a box indicating that no injury was sustained by responding officers. When asked if he was hit with an open hand or a closed fist, he responded, "I don't recall," but he "felt a punch." He clarified that he did not visit the hospital because he did not believe a hospital could treat his injury, but he saw his dentist as soon as was practical. Finally, Tellez-Sandoval stated that the video evidence showed defendant hitting him and him arresting her.

¶ 11    Davis testified that he was present during the incident and observed Tellez-Sandoval "attempt*** to recover the cell phone of the person [they] placed into custody, at which point [Davis] saw [Tellez-Sandoval] getting battered." Davis identified defendant in court as the person

who made contact with Tellez-Sandoval, saying she made "somewhat of an uppercut as he was bending down and then struck him in the face." Davis helped push defendant away from Tellez-Sandoval, and then arrested defendant.

¶ 12    Davis's body-worn camera footage was then introduced into evidence. The video, which is included in the record on appeal and has been viewed by this court, does not depict the initial contact between defendant and Tellez-Sandoval, but the camera turns toward the two as they are colliding. Tellez-Sandoval pushes defendant against a wrought-iron fence and Davis moves toward the pair, briefly grabbing defendant's jacket and then moving her toward the hood of a nearby vehicle. The officers handcuff defendant while she is held against the vehicle.

¶ 13    On cross-examination, Davis testified that defendant did not attempt to interfere with the initial arrest of the other individual. He could not remember who first touched the cellphone that defendant reached for.

¶ 14    In closing, defendant argued that Tellez-Sandoval's injury as depicted in photographs contradicted his description of the occurrence. Defendant argued that a hit in the face with a closed fist typically causes "bruising, *** swelling, a fat lip, a swollen lip," none of which appear in the photographs. Additionally, defendant argued that the video evidence contradicted the testimony and injuries of Tellez-Sandoval.

¶ 15    The jury found defendant not guilty of aggravated battery predicated on bodily harm (count I). However, it found defendant guilty of aggravated battery to a peace officer based on physical contact of a provoking or insulting nature (count II).

¶ 16    Defendant moved for a new trial, which the court denied. Defendant was sentenced to two years' probation with 15 hours of community service.

¶ 17    On appeal, defendant argues that the evidence was insufficient to prove her guilty of aggravated battery where the video evidence does not show her making offensive contact with Tellez-Sandoval, thus contradicting the testimony of Tellez-Sandoval and Davis.

¶ 18    When a defendant challenges the sufficiency of the evidence, this court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact determines the credibility of the witnesses, resolves conflicting evidence, weighs the evidence, and draws reasonable inferences from the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). On appeal, all reasonable inferences from the record are drawn in the State's favor. *People v. Harvey*, 2024 IL 129357, ¶ 19.

¶ 19    We will not substitute our judgment for that of the trier of fact regarding witness credibility and the weight given to each piece of evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). We reverse a conviction based on insufficient evidence only where the evidence is so improbable or unsatisfactory that there is reasonable doubt as to the defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 20    To sustain defendant's conviction for aggravated battery to a peace officer, the State was required to prove the elements of battery (720 ILCS 5/12-3 (West 2022)) and one or more aggravating factors (720 ILCS 5/12-3.05(d) (West 2022)) beyond a reasonable doubt. *People v. Phillips*, 392 Ill. App. 3d 243, 257-58 (2009). First, the State was required to prove that defendant, intentionally or knowingly and without legal justification, made physical contact of an insulting or provoking nature. 720 ILCS 5/12-3 (West 2022). Additionally, the State must have proven that the

battery was committed against a person whom the defendant knew to be a peace officer engaged in his official duties. *Id*. § 12-3.05(d)(4)(i).

¶ 21 In this case, there is no dispute that Tellez-Sandoval was a peace officer performing his official duties. The only issue is whether defendant made physical contact of an insulting or provoking nature with Tellez-Sandoval.

¶ 22 Viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found the elements of aggravated battery beyond a reasonable doubt. Specifically, the testimony of Tellez-Sandoval and Davis established that defendant made offensive contact with Tellez-Sandoval when she hit him, before he arrested her. While none of the video evidence shows the initial contact between Tellez-Sandoval and defendant, it also does not contradict the testimony that defendant "punched [Tellez-Sandoval] in [his] mouth." This is sufficient evidence of the offensive contact, as "the testimony of a single witness, if positive and credible, is sufficient to convict." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 23 Nonetheless, defendant maintains that the video evidence shows merely that she and Tellez-Sandoval collided harmlessly and not in an insulting or provoking manner. She argues that the POD video footage "calls into question" Tellez-Sandoval's "entire testimony about what happened," because it "belies his claim that [defendant] ever swung at him." Specifically, she claims, "The POD footage, with its full angle and zoomed out perspective, captured the incident in its entirety, and at no point can [defendant] be seen throwing an uppercut or swinging at Tellez[-Sandoval] at all."

¶ 24 Although the video evidence does not clearly depict defendant punching Tellez-Sandoval in the mouth, it does not necessarily contradict testimony that the punch occurred. Notably, the

POD video depicts the occurrence from a vantage point down the block. The low resolution and the perspective of the camera—behind defendant's back—precludes viewers from seeing her arms and hands at the moment of her contact with Tellez-Sandoval. Thus, contrary to defendant's assertions, the POD footage does not contradict the testimony of the live witnesses that there was contact, but instead omits the point of contact. Additionally, when viewing three videos, all from different vantage points, there was no other point of contact with any individual where officer Tellez-Sandoval could have sustained these injuries. This is therefore not a situation where the witness testimony was rendered "too implausible to be deemed credible" by independent video evidence. *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 26.

¶ 25    The jury made a reasonable determination, through its verdict, that the State proved, beyond a reasonable doubt, that defendant made physical contact of an insulting or provoking nature with Tellez-Sandoval. This is supported by the credible testimony of Tellez-Sandoval and Davis, as well as the video and photographic evidence presented. The non-testimonial evidence did not directly contradict the testimonial evidence, and we cannot reweigh the evidence presented, which supports the defendant's conviction. *Jackson*, 232 Ill. 2d at 280-81. We find no basis to overturn, and accordingly affirm this conviction.

¶ 26    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.